(No. 37236.
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAWRENCE McDONALD, Plaintiff in Error.

*Opinion filed November 30, 1962.*

SUMMERS, WATSON AND KINPEL, of Champaign, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and HARRISON J. McCOWN, State's Attorney, of Tuscola, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

An information filed in the county court of Douglas County charged the defendant, Lawrence McDonald, with unlawfully keeping gambling devices in violation of the statute which provides: "Whoever, in any room, saloon, inn, tavern, shed, booth or building or enclosure or in any part thereof operates, keeps, owns, rents or uses any clock, joker, tape or slot machine or any other device upon which money is staked or hazarded or into which money is paid or played upon chance, or upon the result of the action of which money or other valuable thing is staked, bet hazarded, won or lost, shall upon conviction for the first offense be fined not less than one hundred ($100) dollars, and a second offense be fined not less than five hundred ($500) dollars * * *." (Ill. Rev. Stat. 1959, chap. 38, par. 341.) He was tried and found guilty by a jury, fined the sum of $500, and now prosecutes this writ of error for review. Although a misdemeanor is involved,

a claim that defendant was unlawfully arrested and searched in violation of constitutional prohibitions gives us jurisdiction to review the cause. (*People* v. *Watkins,* 19 Ill.2d 11.) In addition it is contended that he did not violate the statute, and that he was improperly denied a change of venue.

Defendant was arrested at Villa Grove on the morning of March 30, 1961, and was found to have in his possession, in the trunk of his automobile, 89 punch boards; 3 draw-poker game devices; 37 packets of "jeep" tickets, and some 600 tip boards. A legend on the inside of the lid of the poker games said the cost was 25c a draw and that there were 60 winners ranging from one to 25 dollars. The printed directions to the operator advised that the gross receipts from each poker-game device was $310 and that the pay-out was $197, leaving a "definite profit" of $113. The legend appearing on both the punch boards and the tip boards indicated that a cash sum would be paid to the person holding the number temporarily concealed under a paper seal. Some of the punch boards were also labeled "25c sale" and "80% payout." The tickets referred to as "jeeps" were bound in packets containing these instructions: "This deal must not be used for the distribution of merchandise. Must be used for cash payout only." All of these articles were received in evidence against defendant after a motion to suppress had been denied.

It is urged that the trial court erred in denying the motion to suppress, defendant's position being that he was illegally arrested, making the search and seizure which produced the evidence unreasonable and therefor in violation of his constitutional rights. For the People it is contended that the search was constitutionally made as an incident of a lawful arrest for an offense committed in the presence of the arresting officer. Both contentions have sound decisional background, thus the critical question presented for review is whether a lawful arrest was effected.

The only witness to be called at the hearing on the motion to suppress was the arresting officer, Eugene Miller, the sheriff of Douglas County. Miller testified that he had known defendant for a period of ten years and that, on the morning in question, he stood inside a gas station across the street and kept defendant's automobile under surveillance as it was parked in an alley at the rear of a club building located in Villa Grove. He said defendant came out of the club after about twenty minutes, walked to his car and hesitated for a few moments as a local police car drove by, then opened the trunk of the car and removed a brown paper sack. At this Miller walked across the street and, according to his further testimony, as he approached defendant and the car, he saw other brown sacks in the trunk at least one of which had a tip board protruding from it. Other testimony of the officer established his prior knowledge that tip boards were used as devices upon which money was hazarded, won or lost. Miller said he advised defendant he was under arrest for possessing gambling devices, took the sack from his hand and found that it contained 49 tip boards, then caused defendant to drive his car to the county court house in Tuscola where the balance of the contraband was removed from the car.

Under these circumstances, which are indistinguishable from those present in *People v. West,* 15 Ill.2d 171, and *People v. McGowan,* 415 Ill. 375, where the officers observed policy tickets before making arrests, we are of the opinion that the search and seizure here, without a warrant, was justified as an incident to a lawful arrest for a crime committed in the presence of the arresting officer. (See also: *People v. Clark,* 9 Ill.2d 400; *People v. McIntyre,* 15 Ill.2d 350.) The gist of the offense under the statute here is the keeping of devices used for gambling purposes, (*Bobel v. People,* 173 Ill. 19,) common definitions of the verb "keep" being: "To retain in one's power or possession; to hold; retain," (Webster's New Int. Dictionary, 2 ed., p. 1355,)

and thus at the moment the officer saw the tip board protruding from the sack in the trunk of the car, defendant was violating the statute in the officer's presence. This being so the officer was justified in making the arrest without a warrant and in seizing the contraband. (Ill. Rev. Stat. 1959, chap. 38, par. 657.) The trial court did not err in denying defendant's motion to suppress the evidence.

Defendant next urges that the only purpose of the statute under which he was charged was to prevent the use of machines or devices for gambling, and that he could have been guilty of no violation because the devices found in his possession were not then being used for gambling purposes. However, a complete answer to this contention is found in *Bobel v. People,* 173 Ill. 19, at 28, where it was determined the object of this statute was "not only to suppress the use of these gambling devices or the keeping of them for gambling purposes, but also to prohibit the ownership or the keeping of them, whether for gambling purposes or not, * * *. The purpose of the statute seems to be not only to prohibit the mere use, but to suppress such devices altogether * * *." See also: *People v. One Machine Known as "Circus Days,"* 23 Ill. App.2d 480, 486; *People v. Leach,* 143 Ill. App. 442, 444.

Nor is there merit to defendant's next contention that the prohibition of the statute embraces only machines or mechanical devices used for gambling and does not extend to the punch boards, poker games, tips and tickets he was charged with keeping. This statute and its companion sections, (See: Ill. Rev. Stat. 1959, chap. 38, pars. 342, 343,) have consistently been construed as having application to such inanimate, non-mechanical gambling devices as crap tables, dice, chips, poker tables and a croupier stick. (See: *People v. Cattaneo,* 6 Ill.2d 122; *Frost v. People,* 193 Ill. 635; *People v. Three Roulette Wheels,* 325 Ill. App. 502.) Under the broad meanings which attach to the term "gambling device," we are of the opinion that the contraband here

was within the prohibition of the statute, particularly since the directions accompanying the boards and games, and the legends printed upon them, admit to not the slightest doubt that they were intended to be used as devices upon which money was to be hazarded, won or lost. Cf. *Question Game Co.* v. *Ploner*, 273 Ill. App. 187; *City of Wichita* v. *Stevens*, 167 Kan. 408, 207 P.2d 386.

Defendant also urges that the trunk of an automobile is not within the statutory prohibition against keeping gambling devices in "any room, saloon, inn, tavern, shed, booth or building or enclosure or any part thereof." Contrary to defendant's interpretation, we do not believe the legislature narrowly intended the term "enclosure" to refer only to structures. Apart from the fact the legislature did not employ the term "structure," the common meaning and accepted definition of the word "enclosure" is something that encompasses, surrounds, shuts or fences in, (Webster's New Int. Dictionary, 2d ed.) and this would include the trunk of an automobile. Moreover, to adopt the construction contended for by defendant would produce an absurd result. The legislative purpose in enacting the statute, as we have said, was not only to suppress the use of gambling equipment, but also its ownership and keeping, whether for gambling purposes or not. Most certainly the legislature did not intend that the statute could be circumvented or avoided by merely keeping the gambling devices in a vehicle rather than a structure or building.

Following the denial of his motion to suppress, defendant filed a motion for a change of venue, alleging prejudice of the judge, and it is now contended that the denial of the latter motion was reversible error. We have consistently held, however, that a motion for a change of venue presented after the court has ruled on matters going to the merits comes too late. (*People* v. *Chambers*, 9 Ill.2d 83; *People* v. *Wilfong*, 17 Ill.2d 373; *City of Chicago* v. *Hamlin*, 24 Ill.2d 148.) Here, as pointed out in the *Chambers* case, the trial

court considered a substantive issue and a part of the merits of the cause when it ruled upon defendant's motion to suppress. Under the circumstances a change of venue was properly denied.

The judgment of the county court of Douglas County is affirmed.

*Judgment affirmed.*