**CARBIDE INTERNATIONAL, LTD., Appellant,**

v.

**STATE of Texas, Appellee.**

No. 14385.

Court of Appeals of Texas, Austin.

June 19, 1985.

William C. Herren, Houston, for appellant.

Jim Mattox, Atty. Gen., Johanna McCully-Bonner, Asst. Atty. Gen., Austin, for appellee.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

POWERS, Justice.

Carbide International, Ltd., prays we reverse an adverse trial-court judgment, in the amount of $73,000, rendered in favor of the State of Texas. We will affirm the judgment.

## THE CONTROVERSY

The facts of the case appear to be undisputed. On April 5, 1982, after notice and hearing, the Texas Railroad Commission ordered Carbide to plug, within 45 days, an abandoned oil well formerly operated by Carbide in Caldwell County. The order was not challenged by a suit for judicial review and became a final order of the Commission. Carbide did not plug the well within the time specified.

The order requiring Carbide to plug the well was issued pursuant to several provisions of the Texas Natural Resources Code Ann. (1978 & Supp.1985), to which we shall hereafter refer by section number. The sections pertinent to the present case are found in two Chapters of Title 3 of the Code: Chapter 85, entitled "Conservation of Oil and Gas," and Chapter 89, entitled "Abandoned Wells."

In § 89.011, a duty is placed upon an operator to plug an abandoned well "when required." If it comes to the attention of the Commission that an operator may have breached this duty, the agency is directed to "determine at a hearing, after due notice, whether or not the well was properly plugged...." (§ 89.041). "If the commission finds that the well was not properly plugged, it shall order the operator to plug the well according to the rules of the commission...." (§ 89.042). For the enforcement of its orders pertaining to abandoned wells, issued under Chapter 89, the Code adopts in the following language the enforcement provisions of other chapters:

1. The violation of the Commission's order occurred before September 1, 1983, and is therefore governed by § 85.381 before its amendment in 1983. Tex. Natural Resources Code Ann. § 85.381 (Supp.1985).

2. For purposes of the present case, we may disregard the initial part of § 85.381:
 In addition to being subject to any forfeiture provided by law and to any penalty imposed by the commission for contempt for violation of its rules or orders ...
 We do so because the Code in several sections uses the word "forfeiture" to refer to the loss of something. *See, e.g.,* § 53.021. On the other hand, other sections refer to a "penalty," as in

[T]he commission may enforce this chapter or any rule or order of the commission adopted under this chapter in the same manner and on the same conditions as provided in the other chapters of Title 3 of this Code.

(§ 89.121). In Title 3, Chapter 85, we find § 85.381 which provides for the enforcement of Commission orders relative to oil and gas conservation; but, because of its adoption in § 89.121, it is also a means of enforcing the Commission's orders pertaining to abandoned wells.

The proper scope of § 85.381, before its amendment,[1] is the core of the present controversy. About five months before the Caldwell County well was plugged on August 24, 1984, the State sued Carbide in a district court of Travis County to recover the civil penalty authorized by that section. It provides as follows:

§ 85.381. Penalty for Violation of Laws, Rules, and Orders

In addition to being subject to any forfeiture provided by law and to any penalty imposed by the commission for contempt for violation of its rules or orders, any person who violates the provisions of Sections 85.045 and 85.046 of this code, Title 102, Revised Civil Statutes of Texas, 1925, as amended, including provisions of this code formerly included in that title, or any rule or order of the commission promulgated under those laws shall be subject to a penalty of not more than $1,000 for each and every day of violation and for each and every act of violation.[2]

§ 85.381. We therefore assume, without deciding, that the Legislature intended different things by the two terms. Our discussion in the text therefore treats of the balance of § 85.381:
 [A]ny person who violates the provisions of Sections 85.045 and 85.046 of this code, Title 102, Revised Civil Statutes of Texas, 1925, as amended, including provisions of this code formerly included in that title, or any rule or order of the commission in that title, or any rule or order of the commission promulgated under those laws shall be subject to a penalty of not more than $1,000 for each and every day of violation and for each and every act of violation.

Following a bench trial, the court below assessed the penalty against Carbide, in the amount of $73,000, together with costs of court and post-judgment interest. In its appeal to this Court, Carbide asserts that the scope of § 85.381, properly interpreted, is limited to violations of §§ 85.045 and 85.046 of the Code, both of which concern "waste," and any rules and orders of the Commission promulgated under those two sections of the Code alone. Accordingly, Carbide concludes that the penalty assessed by the trial court in this case is not authorized by § 85.381, for it is undisputed that the Commission's order in the present case was *not* promulgated under either § 85.045 or § 85.046 of the Code, but rather under §§ 89.001–.122 dealing with the plugging of abandoned wells.

## THE PARTIES' CONTENTIONS

Carbide founds its contention upon (1) the interpretive principle of *ejusdem generis* and (2) the judicial policy that penal statutes shall be strictly construed. Accordingly, Carbide argues: (1) that the specific reference to §§ 85.045 and 85.046 limits the scope of the following general description ("or any rule or order of the commission promulgated under those laws") to rules or orders concerning "waste," the subject of §§ 85.045 and 85.046; and (2) any doubt as to the scope of § 85.381 must be resolved against the State because the statutory authorization for a fine is a penal statute which we are required to construe strictly.

■ The State, contending the penalty to be within the scope of § 85.381, points to that part of the section which follows the specific reference to §§ 85.045 and 85.046, and asserts that it authorizes imposition of the penalty in this case. It reads: "Title 102, Revised Civil Statutes of Texas, 1925, as amended, including provisions of this code formerly included in that title." This language was included in pre-code statutes and was interpreted to authorize penalties for violations other than "waste." Thus, the State suggests that no substantive change was intended in the codification process, so that the same interpretation should apply to § 85.381.[3]

■ We think the respective arguments of the parties are considerably embarrassed by other factors not touched upon by the parties. Carbide's argument, it seems to us, is not really within the principle of *ejusdem generis*, because what Carbide contends is a general description ("or any rule or order of the Commission promulgated under those laws") is not such at all. It refers rather, to another kind of particular thing entirely; that is, an administrative agency *rule* or *order*, as opposed to a *statute* such as §§ 85.045 and 85.046. And, indeed, Carbide's argument would leave *no* general category of things to which one may apply the limiting construction mandated by *ejusdem generis*, which is: when particularly described things are followed by words of a more general de-

---

3. The codification process is a part of the Legislature's larger power to revise laws. *See generally* Pool, *Bulk Revision of Texas Statutes*, 39 Tex.L.Rev. 469 (1961). The purpose of the process is not to change the substantive law but to supply a convenience by rearrangement of separate statutes relating to the same subject, so as to achieve a complete and uniform system of statutory law dealing with the subject. Tex.Natural Resources Code Ann. § 1.001. When adopted by the Legislature in a constitutional manner, the resulting Code as a whole constitutes a law in and of itself, and not a mere compilation of previous statutes, save in certain respects not material here. The Code becomes the statutory law of the State respecting the subjects to which it relates, superseding previous statutes omitted therefrom or repealed thereby, so that anyone subject to its provisions may look to the Code alone with safety and confidence, and without resorting to the previous statutes except to explain contradictions and ambiguities. *See generally Camden Fire Ins. Ass'n v. Harold E. Clayton & Co.*, 117 Tex. 414, 6 S.W.2d 1029 (1928); *Long v. State*, 109 Tex.Cr.R. 140, 3 S.W.2d 448 (1928); *American Indemnity Co. v. City of Austin*, 112 Tex. 239, 246 S.W. 1019 (1922); *State v. Burgess*, 109 S.W. 922 (Tex. 1908); *City of Lubbock v. Magnoli Petroleum*, 6 S.W.2d 80 (Comm.App.1928, judgmt aff'd). The Code Construction Act, Tex.Rev.Civ.Stat.Ann. art. 5429b–2 (Supp.1985), supplies certain "rules to aid in the construction of codes ... enacted pursuant to the state's continuing statutory revision program." *Id.* § 1.01.

scription, the general description is not to be construed in its widest sense but is held to encompass only things of the same general class as those particularly described. *Farmers' & Mechanics' Nat. Bank v. Hanks,* 137 S.W. 1120, 1124 (Tex.1911). In other words, Carbide's construction permits the penalty solely for violations of §§ 85.045 and 85.046, or any rule or order promulgated thereunder. Where then is the category of *general* description which survives this narrowest of interpretations to become the object of the principle of *ejusdem generis*? There is none in fact and the interpretive principle is wholly inapplicable for that reason. *United States v. Turkette,* 452 U.S. 576, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1981). Moreover, Carbide's theory entirely fails to meet the rather formidable barrier presented by § 89.121 of the Code which *independently* adopts § 85.381 as a means for enforcing the Commission's rules and orders pertaining to abandoned wells.

On the other hand, it seems to us that the State's argument does not adequately reply to Carbide's invocation of the rule of strict construction in light of the confusing language of § 85.381. This section literally authorizes the penalty for violations of "Title 102, Revised Civil Statutes of Texas, 1925, as amended," or any rule or order promulgated thereunder. But "Title 102 ... as amended," was *expressly repealed* in the very act which adopted the Code. Acts 1977, 65th Leg., ch. 871, p. 2345, at sec. 2, p. 2689. How then may it be contended that § 85.381 contemplates the imposition of penalties upon a specific class of conduct—violation of "Title 102 ... as amended"—when the Code which promul-

gated § 85.381 simultaneously repealed the statutory provisions which constituted that class?

Quite possibly, of course, the Legislature may have intended to include "Title 102 ... as amended" for the purpose of reaching violations of those statutory provisions which occurred before September 1, 1977, the effective date of the Code, but this is doubtful for these violations would have been reached in any event. *See* Code Construction Act, Tex.Rev.Civ.Stat.Ann. art. 5429b–2, § 3.11(a)(3) (1978). We conclude that the reference to the repealed statutes was solely for the purpose of explaining the clause which follows: "including provisions of this code formerly included in that title," notwithstanding that this is an extremely cumbersome way of incorporating the substance of former, repealed statutes brought forward into the Code.[4]

Having pointed out what we view as shortcomings in the arguments of the parties, we turn to our own analysis of § 85.381 to determine whether its scope is limited to violations of §§ 85.045 and 85.046, and orders and rules promulgated thereunder; or whether it includes as well a violation of the Commission's order to plug an abandoned well, promulgated under § 89.001 *et seq.* of the Code. We shall discuss separately the two propositions advanced by Carbide.

## EJUSDEM GENERIS

We hold, first, that the principle of *ejusdem generis,* is not applicable to the case. The clause relied upon as constituting a generalized description—"any rule or order

---

4. Even in the form it took before enactment of the Natural Resources Code, § 85.381 was not a paragon of draftsmanship. As Tex.Rev.Civ.Stat. Ann. (1962) (repealed eff. Sept. 1, 1977), it provided:

 In addition to being subject to any forfeiture that may be provided for by law and to any penalty that may be imposed by the Commission for contempt for the violation of its rules, regulations, or orders, any person violating any of the provisions of this Act or of Title 102, Revised Civil Statutes of Texas, 1925, as amended, or violating any rule, regu-

lation, or order of the Commission promulgated thereunder, shall be subject to a penalty of not more than One Thousand Dollars ($1,000) for each and every day of such violation.... The conjunction "or" is used to join what are two coordinate clauses: "the provisions of this Act" *or* the provisions of Title 102. But the two clauses are redundant, for art. 6039 and "this Act" constituted parts of Title 102. The poor draftsmanship occurred in the first amendment to the original act and was simply carried forward in a succession of amendments and finally into the present Code.

of the commission promulgated under those laws"—is *not* merely a catchall or more generalized description of what has preceded in the statute. As mentioned above, the preceding descriptions are all *statutes,* whereas the clause in question is specifically and literally limited to the *orders* and *rules* promulgated by an administrative agency *under* those statutes. There is, therefore, *no* generalized description to which the principle of *ejusdem generis* could possibly apply. Carbide's argument does not, moreover, leave any possible meaning to be assigned to what *is* patently the category generally described in § 85.381, and that is the clause which reads: "Title 102 ... as amended, including provisions of this code formerly included in that title...." And even if we apply the principle of *ejusdem generis* to limit this general clause to, for example, statutes pertaining to the conservation of oil and gas, the limitation in no way renders § 85.381 inapplicable to the enforcement of the Code provisions and Commission orders pertaining to abandoned wells under Chapter 89. This is because Chapter 89, in § 89.121, *independently* adopts the terms of § 85.381 as a means for enforcing the statutes, rules, and orders pertaining to abandoned wells. Moreover, Carbide's invocation of *ejusdem generis* is wholly untenable for an additional reason.

 The principle of *ejusdem generis, if it be applicable* in the way suggested by Carbide, may not prevail if the statute in question contains language which affirmatively discloses a legislative intent contrary to the interpretation which the principle would produce. *Employers' Casualty Co. v. Stewart Abstract Co.,* 17 S.W.2d 781 (Tex.Comm.App.1929). Section 85.381 expressly refers to "provisions of *this* code formerly included in" the repealed statutes which comprised Title 102 (emphasis supplied). This reference to other provisions of the Code, brought forward from Title 102 in the codification process, must mean *something* and it is a commonplace that we must strive to give effect to every part of a statute if that is reasonably possible. *American Surety Co. of New York v. Ax-*

*tell Co.,* 120 Tex. 166, 36 S.W.2d 715 (1931). We may not hold the reference to have been meaningless, if that is avoidable by a reasonable interpretation. We hold it reasonable to conclude that the reference was intended to incorporate in § 85.381 those repealed statutes formerly found in Title 102, insofar as they were carried forward into the Code, so that a violation of any of these statutes or the violation of a rule or order promulgated under them, would be enforceable through the coercive effect of the penalty provision.

Our conclusion is reached, of course, by inference from the words used in § 85.381, however inartful they are. And our conclusion is buttressed by the fact that no reason of logic, experience, or context is suggested as to why the Legislature might have intended to narrow the scope of the section from that which prevailed under its predecessor, Tex.Rev.Civ.Stat.Ann. art. 6036 (1962). We must add, however, that no similar reason is suggested to explain why the Legislature, in its drafting of § 85.381, thought it wise to expressly list §§ 85.045 and 85.046, for these too were brought forward from previous statutes in Title 102 and, therefore, must necessarily fall within the general reference to "provisions of this code formerly included" in Title 102. But § 89.121, dealing specifically with the Commission's enforcement of the operator's duty of plugging abandoned wells, expressly provides that the Commission may enforce that duty, or any order made in that regard, "in the same manner and on the same conditions as provided in the other chapters of Title 3 of this code." Section 85.381, the statute in dispute in the present appeal, forms a part of Title 3 of the Code. Therefore, reading the Code as a whole, we believe our construction not only reasonable but the meaning undoubtedly intended by the Legislature in its reference to provisions of the Code carried forward from Title 102.

### STRICT CONSTRUCTION OF A PENAL STATUTE

 Section 85.381 is without question a *penal* statute. It must therefore be

strictly construed, for one may not presume that the Legislature intended that the punishment authorized therein should extend beyond what is expressly stated.

It is a well-established principle of statutory construction that penal statutes must be strictly construed in determining the liability of the person upon whom the penalty is imposed, and that the more severe the penalty, and the more disastrous the consequence to the person subject to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such a person and against the enforcement of such law.... A penal statute ... must be couched in such explicit terms that the party upon whom it is to operate may with reasonable certainty ascertain what the statute requires to be done, and when it must be done; *otherwise, there would be no opportunity for a person charged with the duty to protect himself by the performance of it according to the law.*

*Missouri, K. & T. Ry. Co. of Texas v. State,* 100 S.W. 766, 767 (Tex.1907) (emphasis added). *See also Houston, E. & W.T. Ry. Co. v. Campbell,* 45 S.W. 2 (Tex.1898); *State v. International & G.N. Ry. Co.,* 179 S.W. 867 (Tex.1915). As suggested by the inverse correlation between the severity of the punishment and the strictness of construction, the term "strict construction" has a relative meaning—the meaning assigned to a statute may be more or less "strict" according to the interest at risk.

 The rule of strict construction of penal statutes rests upon two principal reasons, one of which is suggested by the words emphasized in the quotation from *Missouri, K. & T. Ry. Co. of Texas v. State, supra.* That reason is *to give fair notice* so that persons subject to the statute may conform their conduct to what the statute requires and thereby avoid the penalty permitted to be imposed. In the present context, the rule also supplies a *means for judicially neutralizing the arbitrary action* of an administrative official, taken in the exercise of a discretionary power conferred upon him. *See generally* 3 Sands, *Sutherland Statutory Construc-*

*tion,* § 59.03, at 6–8 (1974). We do not conceive that either reason is applicable to the present case in a way that would justify our limiting the scope of § 85.381 "strictly" to violations of §§ 85.045 and 85.046, and any rule or order promulgated by the Commission under those two sections alone.

 Section 85.381 may only be applied, in the present context, under a procedure plainly designed *to enable* one to ascertain what the law requires of him by way of conduct, and *to avoid* arbitrariness, and *to assure* fairness. In quite explicit and unambiguous terms, § 89.011 requires the operator to plug an abandoned well "when required." An order to plug the well may only follow a notice and hearing on the issue. The penalty may only be imposed for a violation of the resulting order to plug the well.

In 3 Sands, *Sutherland Statutory Construction, supra,* § 59.07, at 22, we find this statement:

Modern emphasis on the use of fair procedures to determine when an individual is subject to penalty liability suggests that procedural safeguards may now be conceived to be more suitable than the safeguard of strict construction to protect the interests of individuals in not being subjected to undeserved punishment. *This may be an acceptable alternative if procedures permit reliable individualized judgments as to whether persons upon whom penal sanctions are sought to be imposed may reasonably be held to have understood that their actions were inculpatory, regardless of how the pertinent statute may have been understood by others or what it may "mean" in general.*

(Emphasis added.)

 In the present case, and under the statutory provisions described above, whether Carbide's conduct was culpable was not determined until after notice and hearing, and after Carbide failed to obey the order. Section 89.121 expressly gives clear notice that orders to plug abandoned

wells may be enforced in the same manner as an order issued under other chapters of the same title. Therefore, notwithstanding the poor draftsmanship reflected in § 85.-381, we conclude Carbide may not reasonably contend that it had no opportunity to protect itself because the wording of the § 85.381 did not give fair notice of what conduct was required of Carbide in order to avoid the penalty authorized by that section. Such notice was quite explicitly given in § 89.011 and in the administrative proceeding which culminated in the order to plug which was issued in this case. Nor may Carbide reasonably contend that an arbitrary imposition of the penalty is possible because of the wording of these statutes. Carbide does not and did not challenge the administrative proceedings by which it was determined that Carbide was required to plug the well, and failed to do so. We may not presume that the order was entered arbitrarily.

■ The policy of strictly construing a penal statute comes at the end of the process of interpreting what the Legislature has written; it is not an overriding consideration of being lenient to wrongdoers. Nor is it "an inexorable command to override common sense and evident statutory purpose.... Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers." *United States v. Brown,* 333 U.S. 18, 25–26, 68 S.Ct. 376, 379–380, 92 L.Ed. 442 (1948). We have construed § 85.381 as incorporating § 89.-011 by means of the clause "provisions of this code formerly included in" Title 102. The correctness of our construction is supplemented by the clear terms of § 89.121, where it is independently provided that the Commission may enforce an operator's duty to plug an abandoned well "in the same manner and on the same conditions as provided in the other chapters" of the same Code title.

Therefore, in light of the Code as a whole, we cannot conceive that § 85.381 has been extended here beyond its plain meaning to reach conduct not clearly within its purview. *Satterfield v. Satterfield,* 448 S.W.2d 456 (Tex.1969); *Day v. State,* 534 S.W.2d 681 (Tex.Cr.App.1976). Accordingly, we affirm the judgment below.