**Carl J. HUDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00662–CR.**

Court of Appeals of Texas, Dallas.

May 20, 1987.

R.J. Hagood, Dennison, for appellant.

John H. Hamras, Sherman, for appellee.

Before HOWELL, McCLUNG and McCRAW, JJ.

McCLUNG, Justice.

Appellant was convicted of solicitation of a child, given a 365–day sentence, and fined $2,000. He asserts that the evidence was insufficient. We agree. Accordingly, we reverse the judgment of the trial court and render a judgment of acquittal.

Complainant testified that she was eleven years old at the time of the alleged offense. Accompanied by her older brother and a seventeen-year-old female friend of the family, complainant arrived at the location of a traveling carnival at about 10:00 p.m. She noticed appellant at different times and he appeared to be following her. Complainant's testimony suggests that she was watching the seventeen-year-old play a game at one of the booths when she was approached by appellant. At this time, complainant's brother was at a booth in another part of the carnival.

The exact positions of complainant and the seventeen-year-old in relation to the booth and each other at the time of the alleged incident are not clear from the record. However, the seventeen-year-old testified that complainant was three to four feet away from her when the seventeen-year-old was playing at the booth. Complainant testified that while the seventeen-year-old was playing, appellant "grabbed me by the arm and pulled me and he said he would give me $20.00 for my [genitalia] and I yanked my arm away from him." Complainant then told the seventeen-year-old and the person attending the booth what had happened and what appellant had said. Complainant and the seventeen-year-old looked for her brother and told him. The record suggests that her brother made some attempt to locate appellant but did not succeed. Complainant also reported the incident to her mother, although it is not clear when she did so.

Complainant drew a diagram of the place where this incident allegedly occurred. The diagram depicts two booths, separated by an open walkway. In back of the booths were two trailers. Later testimony indicated that the trailers were eighteen-wheelers, probably used to haul carnival equipment. Complainant did not estimate

dimensions, but she did testify that the booths were not close together. Other testimony estimated that the booths were three to four feet apart and that the trailers were three to four feet behind the booths. Complainant testified that she thought that appellant was trying to get her to the area between the booths, three or four steps away.

Complainant, the seventeen-year-old, and complainant's mother returned to the carnival the next day. Testimony indicated that appellant was there and was watching complainant and other girls. The seventeen-year-old called the police when she saw appellant. It is not clear when appellant was arrested and charged with solicitation of a child, although the information is dated May 27, 1986, five days after the alleged incident.

To find appellant guilty, the charge required the jury to find, among other things, that appellant invited complainant "to *enter* an *enclosed area*" (emphasis added). We hold that the evidence is insufficient that appellant invited complainant to enter an enclosed area. Such conduct is proscribed by the Penal Code which provides:

**§ 25.06. Solicitation of a Child**

(a) A person commits an offense if he entices, persuades, or invites a child younger than 14 years to enter a vehicle, building, structure, or enclosed area....

The Penal Code does not define "enclosed area." Therefore, we may look to common usage and legislative intent to de-termine what conduct the statute proscribes. *Howard v. State*, 690 S.W.2d 252, 254 (Tex.Crim.App.1985).

An aid to ascertaining legislative intent is the rule of *ejusdem generis. Texas v. United States*, 292 U.S. 522, 534, 54 S.Ct. 819, 825, 78 L.Ed. 1402 (1934). The rule here would limit "enclosed area" to objects in the same general class as vehicle, building, and structure.

The history of this Penal Code section supports a narrow interpretation of "enclosed area." As originally passed by the Senate, section 25 made it unlawful to invite a minor "to enter any vehicle, room, house, office or *other place*" for immoral purposes (emphasis added).[1] For whatever reason, this was changed in the House to the present, more restrictive language finally approved by the legislature.

A narrow interpretation of "enclosed area" is also supported by the construction of the statute. The legislature used the verb "enter" rather than "go to" or something more general. "Enter" implies the penetration of some closure rather than just movement toward some place and is, therefore, more consistent with a narrow meaning of "enclosed area."

The common usage of "enclosed area" does not support a construction which would encompass an open walkway. A wrecking yard *surrounded* by a fence was held to be an enclosure in *State v. Cabrera*, 114 Ariz. 233, 560 P.2d 417, 419 (1977). An

**1.** The statute originally passed read:
   (a) It shall be unlawful for any person with lascivious intent to solicit, entice, allure, per-suade, or invite, or attempt to solicit, entice, allure, persuade or invite, any child under fourteen (14) years of age to enter any ve-hicle, room, house, office *or other place* for the purpose of proposing to such child the performance of an act of sexual intercourse or an act which constitutes the offense of sodomy or for the purpose of proposing the fondling or feeling of the sexual or genital parts of such child or the breast of such child, if the child be a female, or for the purpose of proposing that such child fondle or feel the sexual or genital parts of such person. [Emphasis added.]
S.J. of Tex. 65th Leg., Reg.Sess. 1750 (1977). This statute appears to be derived from article 535b of the old Penal Code:

   It shall be unlawful for any person with lascivious intent to entice, allure, persuade, or invite, or attempt to entice, allure, persuade or invite, any child under fourteen (14) years of age to enter any vehicle, room, house, office or other place for the purpose of pro-posing to such child the performance of an act of sexual intercourse or an act which constitutes the offense of sodomy or for the purpose of proposing the fondling or feeling of the sexual or genital parts of such child or the breast of such child, if the child be a female, or for the purpose of committing an aggravated assault on such child, or for the purpose of proposing that such child fondle or feel the sexual or genital parts of such person.
*repealed,* Acts of 1973, 63rd Leg. p. 992 Ch. 399, § 3.

automobile trunk has been held to be an enclosure because it encompasses, surrounds, shuts or fences in. *People v. McDonald*, 26 Ill.2d 325, 186 N.E.2d 303, 306 (1962). On the other hand, a structure which had three open portals was held not to be enclosed for purposes of the burglary statute. *Day v. State*, 534 S.W.2d 681, 684–85 (Tex.Crim.App.1976).

The plain meaning of "enclosed area" does not comprehend an open walkway. Although enclose is a general word, an area that is enclosed is one that is fenced off, enveloped, confined, or surrounded. *See* Webster's Third New International Dictionary (1981). To hold that a walkway is an "enclosed area" would do violence to the plain meaning of the statute. We would, in effect, be rewriting the statute. This we decline to do.

We hold that the evidence is insufficient to support appellant's conviction under Penal Code section 25.06. Consequently, the judgment of the trial court is reversed and a judgment of acquittal is rendered.

McCRAW, J., files a dissenting opinion.

McCRAW, Justice, dissenting.

I respectfully dissent. I would hold that the evidence is sufficient to support the jury's finding that a dark, four foot wide walkway blocked off by a large trailer at a depth of four feet is an "enclosed area" as contemplated by section 25.06 of the Texas Penal Code. In holding that a private area, encompassing no more than sixteen square feet and enclosed on three sides, where a child is vulnerable to sexual contact, is not an "enclosed area," the majority misapplies basic rules of statutory construction. Further, the majority fails to apply the correct standard of appellate review when analyzing sufficiency of the evidence.

The complainant and other witnesses testified that appellant approached the complainant while she stood three or four steps from "an enclosed area away from people," between "little buildings." The area was only three or four feet wide. An eighteen-wheel trailer was parked three or four feet behind the booths, partially blocking the walkway. The complainant testified that appellant intended to drag her into this nine to sixteen square foot area.

The booths were near a noisy ride called "the Himalayas" on which riders were yelling and screaming. It was late at night, and consequently, dark, and the complainant testified that the appellant could have done "nasty things" to her without being seen. With all the noise, no one would have heard her if she had screamed. The seventeen-year-old friend who accompanied the complainant to the carnival testified as follows:

Prosecutor: Do you understand what the term "private" means?

Witness: Yes, sir.

Prosecutor: Did this appear to be a private area to you?

Witness: Yes, sir.

Prosecutor: This area between the booths?

Witness: Yes, sir.

\* \* \* \* \* \*

Prosecutor: Would it have been an enclosed enough area that some nasty things could have occurred without people being able to see it?

\* \* \* \* \* \*

Witness: Yes, sir.

Complainant's mother also testified that the nine to sixteen square foot area bordered by the booths and the trailer was sufficiently private and enclosed that a person could be excluded from view and from the general traffic of people through the carnival.

I would hold that this evidence and the record as a whole, when viewed in the light most favorable to the verdict, is sufficient to support appellant's conviction for inviting a child to enter an "enclosed area," as contemplated by the statute.

The cardinal rule of statutory interpretation is to ascertain legislative intent in enacting the statute. *Faulk v. State*, 608 S.W.2d 625, 631 (Tex.Crim.App.1980); *Lucario v. State*, 677 S.W.2d 693, 699–700 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Diggles v. State*, 641 S.W.2d 667, 669

(Tex.App.—Dallas 1982, pet. ref'd). Even when employing the rule of 'ejusdem generis', the touchstone in interpreting a statute is always the legislature's purpose: "The rule of 'ejusdem generis' is applied as an aid in ascertaining the intention of the legislature, *not to subvert it when ascertained.*" *Texas v. United States,* 292 U.S. 522, 534, 54 S.Ct. 819, 825, 78 L.Ed. 1402 (1934) (emphasis added). Under that doctrine, general words following an enumeration of particular or specific items should be construed to fall into the *same general class* as those items specifically named. *See Carbide International v. State,* 695 S.W.2d 653, 658 (Tex.App.—Austin 1985, no writ) (construing civil penalty statute).

The gravamen of the offense of solicitation of a child is to invite, entice or persuade a child to enter a place where he or she is vulnerable to an attempt by an adult to engage in sexual intercourse, deviate sexual intercourse, or sexual contact. I would conclude that by including the phrase "enclosed area" the legislature informs us that the situs of the offense need not have four walls and a roof, although there is a requirement that the area be of a private nature, shielded from general view and public access. It is this fact—being closed off from general view and public access—that makes the child vulnerable to the sexual advances of the adult. The majority cites with approval *State v. Cabrera,* 114 Ariz. 233, 560 P.2d 417, 419 (1977), which held that a used-car wrecking yard surrounded by a solid tin and open chain-link fence was an enclosure. Certainly, in an area open to public view, such as one surrounded by a chain-link fence, the child is not as vulnerable to attack as would be the eleven-year-old complainant in the instant case.

In attempting to ascertain legislative intent, the majority opts for a mechanical application of *ejusdem generis* to subvert that intent. The majority does not, however, construe "enclosed area" so that it falls into the *same general class* as vehicle, building and structure. Instead, "enclosed area" is interpreted to be the *same as* vehicle, building and structure. If this interpretation comports with legislative intent, then either the phrase "enclosed area," or the other items listed—vehicle, building and structure—are surplusage. Another basic rule of statutory construction is that "every word of a statute must be presumed to have been used for a purpose, and that the Legislature must be presumed to have intended the entire statute in question to be effective." *Ex parte Santellana,* 606 S.W.2d 331, 333 (Tex. Crim.App.1980). Under the majority's interpretation, "enclosed area" may be deleted from the statute, or alternatively, "vehicle, building, structure" may be deleted, because only a vehicle, building or structure is an enclosed area. This doctrine was never intended to be applied mechanically. By utilizing the doctrine of *ejusdem generis,* the majority construes the statute to create surplusage and thereby subverts the presumption that the legislature intends each word in a statute to have meaning and to be effective.

The majority cites with approval *People v. McDonald,* 26 Ill.2d 325, 186 N.E.2d 303, 306 (1962), which held that an automobile trunk is an enclosure for purposes of a statute prohibiting the keeping of any gambling device in "any room, saloon, inn, tavern, shed, booth or building or enclosure, or any part thereof." *McDonald,* 186 N.E.2d at 306. In *McDonald,* the Illinois court properly looked to legislative intent to determine whether an automobile trunk is an enclosure under their gambling statute. Under this majority's use of *ejusdem generis,* an automobile trunk could not be an enclosure because it is not in the same class as room, saloon, shed, booth or building. The Illinois court held that the legislative purpose in enacting the statute was to suppress the ownership and keeping of gambling devices. In rejecting the defendant's contention that the legislature intended the term "enclosure" to refer only to structures, the court stated, "Most certainly the legislature did not intend that the statute could be circumvented or avoided by merely keeping the gambling devices in a vehicle rather than a structure or building." *Id.* 186 N.E.2d at 306. The majori-

ty's holding would benefit from such an approach.

The majority also cites *Day v. State*, 534 S.W.2d 681 (Tex.Crim.App.1976) and its holding that a structure with three large doorways that could not be closed was not a "building" within the terms of the burglary statute. That statute defined building as "any enclosed structure." Of course, interpretations of the burglary statute are not helpful for defining "enclosed area" for purposes of this solicitation of a child statute. Only when statutes are *in pari materia* are their provisions construed together. *Alejos v. State*, 555 S.W.2d 444, 449 (Tex.Crim.App.1977). It is only when two statutes deal with the same general subjects that they are said to be *in pari materia*. *Aranda v. State*, 640 S.W.2d 766, 773 (Tex.App.—San Antonio 1982, no pet.). Further, the court recognized in *Day* that "enclosed structure" is much more restrictive than the phrase "structure or enclosure" as used in the arson statute. *Day*, 534 S.W.2d at 685 n. 3. It is certainly more restrictive than "enclosed area" as used in section 25.06.

The majority also finds persuasive, in defining "enclosed area", the fact that former versions of this statute made it a crime to invite a child to enter a "vehicle, room, house, office or *other place.*" The majority indicates that by deleting "other place" and adding "enclosed area" the legislature intended a narrow interpretation of "enclosed area." If the legislature wanted to arrive at as narrow an interpretation of "enclosed area" as the majority finds, why did they not simply delete "other place" without adding "enclosed area?" By including "enclosed area" in section 25.06 with vehicle, building and structure, it seems logical to assume that the legislature intended "enclosed area" to mean something different from, and less restrictive than, vehicle, building or structure.

Having concluded that an "enclosed area" is intended by the legislature to be a place closed off from general view and public access where a child is vulnerable to the sexual advances of an adult, I now examine the record to determine if there is sufficient evidence to support appellant's conviction for solicitation of a child by inviting, enticing or persuading her to enter an "enclosed area." The correct standard for appellate review of the sufficiency of the evidence is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim. App.1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985).

The record shows that appellant grabbed the eleven-year-old complainant between's arm in an attempt to drag her two booths at a carnival. The space between the booths was only three or four feet wide. Three or four feet behind the walkway, and partially blocking it, was parked an eighteen-wheel trailer where the carnival stored equipment. It was a dark, private area, and the appellant could have done "nasty things" to the complainant without being seen. The booths were near a noisy ride, and because of the loud machinery and the yelling of those on the ride, no one would have heard her if she had screamed. When he grabbed the complainant, appellant offered her $20.00 to engage in sexual intercourse with him.

I would hold that the evidence is sufficient to sustain the conviction of appellant by the jury for enticing, persuading or inviting a "twelve-year-old [sic] child" to enter an enclosed area with intent to engage in sexual intercourse as charged in the information, and overrule appellant's second point of error. I must, therefore, address appellant's first point of error.

In his first point of error, appellant contends that the trial court erred when it prohibited him from asking prospective jurors about their theories of punishment. As a general rule, the trial court should give a defendant wide latitude in questioning the jury panel during voir dire. *Trevino v. State*, 572 S.W.2d 336, 337 (Tex.Crim. App.1978). The trial court can, however, control the scope of voir dire by exercising its sound discretion to limit improper ques-

tioning. *Smith v. State*, 513 S.W.2d 823, 826 (Tex.Crim.App.1974).

A trial court's decision to restrict voir dire may only be reviewed to determine whether the restriction constituted an abuse of discretion. *Smith*, 513 S.W.2d at 827. To show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim. App.1985). "A question is proper if it seeks to discover a juror's views on an *issue applicable to the case."* *Smith*, 703 S.W.2d at 643 (emphasis added) (citing *Powell v. State*, 631 S.W.2d 169 (Tex.Crim. App.1982); *Smith v. State*, 513 S.W.2d 823; *Mathis v. State*, 167 Tex.Crim. 627, 322 S.W.2d 629 (1959)).

Appellant sought to question jurors about their theories of punishment. The question is proper if punishment is an issue applicable to the case. *See Campbell v. State*, 685 S.W.2d 23, 25 (Tex.Crim.App. 1985); *Powell*, 631 S.W.2d at 170. Although the jury ultimately assessed punishment, appellant had not elected to have the jury impose punishment at the time he sought to question prospective jurors about punishment; therefore, punishment was not an issue at that time. A jury assesses punishment only if the defendant has filed a sworn motion for probation before the commencement of trial in an action where the jury may recommend probation, or makes such election in writing before the commencement of the voir dire examination of the jury panel. Tex.Code Crim.Proc. Ann. art. 37.07, § 2(b) (Vernon Supp.1986).

The record before this Court reveals no sworn motion for probation and no written election for the jury to assess punishment. Appellant has failed to demonstrate that the trial court abused its discretion in restricting voir dire questions about theories of punishment. I would, therefore, overrule appellant's first point of error and affirm the judgment of the trial court.