Barbara K. LYON, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–88–167–CR.

Court of Appeals of Texas, Austin.

March 15, 1989.

Rehearing Denied April 12, 1989.

David C. Duggins, John F. Williams, L.G. Skip Smith, Clark, Thomas, Winters & Newton, Austin, for appellant.

Jonathan Davis, Acting City Atty., Dan Meador, Asst. City Atty., for appellee.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

JONES, Justice.

On stipulated facts, appellant, Barbara K. Lyon, was convicted of violating the Bingo Enabling Act (the "Act"), Tex.Rev. Civ.Stat.Ann. art. 179d, § 11(q) (Supp.1989), and assessed a fine of $125. We will reverse the judgment of conviction.

Section 11(q) of the Act provides that a person may not "award or offer to award a door prize or other prize to persons present at a bingo occasion or participating in a bingo occasion in addition to the prizes awarded for winning the individual bingo games." In points of error one, two, and three, Lyon argues that the evidence shows conclusively that she did not violate section 11(q) of the Act, or that there is insufficient evidence to prove that she did violate it. She also asserts, in point of error four, that section 11(q) is unconstitutionally vague. This Court must decide (1) what constitutes a "bingo occasion," and (2) whether Lyon violated the Act by awarding a prize to someone "present at" or "participating in" a bingo occasion.

The parties agreed to the following stipulated facts:

"On the evening of Tuesday, February 16, 1988, Parents Anonymous of Texas was conducting a series of bingo games at 1700B Smith Road, Austin, Texas. The license of Parents Anonymous of Texas, issued by the State Comptroller's Office, authorized it to conduct bingo games on that day between 5:00 p.m. and 8:20 p.m. The bingo games conducted by Parents Anonymous of Texas terminated at approximately 8:20 p.m. After a one-half hour intermission, during which no bingo games of any kind were conducted or authorized to be conducted, Mental Health Association in Texas conducted a new series of bingo games. The license of the Mental Health Association in Texas authorized it to conduct bingo games on that day between 8:50 p.m. and 11:00 p.m.

"During the one-half hour intermission, between approximately 8:20 p.m. and 8:50 p.m. on February 16, 1988 the Defendant Barbara K. Lyon awarded a prize, consisting of $100.00 in cash, to Emma M. Emma M. was selected as the prize winner by means of a random drawing. Interested persons became eligible for the drawing by filling out an entry form. No entry forms were made available until the one-half hour intermission began. Interested persons filled out the entry forms and turned in the forms to Defendant during the one-half hour intermission between the conduct of the bingo games, up to the point when Defendant announced that no more forms would be accepted. The deadline to submit forms for the drawing occurred during the one-half hour intermission. Any person present on the premises was eligible to enter the drawing. There was no requirement that entrants play bingo or give any form of consideration to qualify to enter the drawing.

"During the one-half hour intermission, and after announcing that no more entry forms would be accepted, Defendant at random drew the entry form of the person entitled to the $100.00 cash prize. Defendant drew the name of Emma M., and awarded Emma M. the $100.00 cash prize. Defendant awarded the prize during the one-half hour intermission during which time no one was licensed to conduct bingo games. Defendant only offered to award the prize during this one-half hour intermission, and at no time offered to award the prize during a time when bingo games were being played or could have been legally played.

"Defendant's business does not involve the sponsoring or operation of bingo games. Defendant is not a person licensed to conduct bingo games pursuant to the Bingo Enabling Act, Tex.Rev.Civ.Stat.Ann. Art. 179d. Defendant operates concessions serving refreshments on premises where bingo games are being conducted by licensed operators."

Essentially, Lyon argues that a "bingo occasion" is equivalent to the licensed times during which bingo games may be played. The State, on the other hand, claims that "bingo occasion" includes the entire time during which people are gathered for the purpose of playing bingo, including times before, during, and after the actual licensed hours for playing bingo. Under this interpretation, the intermission period between two organizations' licensed bingo hours would generally fall within one or both organizations' "bingo occasion."

"Bingo occasion" is not defined in the Act. Accordingly, the words must, if possible, be given their plain meaning, without regard to the distinction usually made between the construction of penal laws and laws on other subjects, unless the act clearly shows that they were used in some other sense. *Campos v. State*, 623 S.W.2d 657, 658 (Tex.Cr.App.1981).

Several well-known dictionaries define "occasion" as follows: The American Heritage Dictionary of the English Language (1973): "An event or happening; the time at which an event or happening occurs"; Webster's Third New International Dictionary (Unabridged Ed.1961): "[A] particular occurrence: happening, incident; a particular time at which something takes place: a time marked by some happening"; The Random House Dictionary of the English Language (Unabridged Ed.1967): "[A] particular time, esp. as marked by certain circumstances or occurrences; a special or important time, event, ceremony, celebration, etc."; The Compact Edition of the Oxford English Dictionary (1971): "[T]he time, or one of the times, at which something happens; a particular time marked by some occurrence or by its special char-

acter; an event or function of some special kind."

Each of these definitions seems to emphasize that an "occasion" is characterized by a "particular time" that an event takes place, implying the existence of fixed boundaries, i.e., discernible beginning and ending points. We will attempt to apply this meaning to the phrase "bingo occasion."

It is the duty of this Court to determine the intent of the Legislature and then to construe the term "bingo occasion" in accordance therewith. *See Howard v. State*, 690 S.W.2d 252, 254 (Tex.Cr.App.1985); *Ex parte Hayden*, 152 Tex.Crim. 517, 215 S.W. 2d 620, 623 (1948). In determining the intent of the Legislature and the meaning of a statute, we must look first to the provisions of the statute itself. *Faulk v. State*, 608 S.W.2d 625, 631 (Tex.Cr.App. 1980). Further, we must presume that (1) every word of the statute is used for a purpose, and (2) language in the statute is used with a meaning and a purpose. *Polk v. State*, 676 S.W.2d 408, 410 (Tex.Cr.App. 1984).

A chronology of the development of the relevant statutory language and its agency interpretations is, in this instance, helpful in determining the Legislature's intent:

1. November 10, 1981. The Bingo Enabling Act, 1981 Tex.Gen.Laws (1st C.S.), ch. 11, §§ 1–42, at 85–102, became effective. The original Act did not contain section 11(q), and contained only a few references to "occasion" or "bingo occasion," including the following in section 11(f): "A series of prizes on any one bingo occasion may not aggregate more than $2,500," and the following in section 13(b):

> The comptroller of public accounts shall issue to an applicant a license for the conduct of bingo ... if the comptroller determines that: ... (5) ... the aggregate of all prizes offered and given in all of the games conducted on a single occasion under the license will not exceed the sum or value of $5,000.

The Comptroller was authorized and directed to receive, investigate, and rule on applications for bingo licenses; issue, amend,

suspend, or revoke bingo licenses; control and supervise bingo games; receive reports submitted by licensees; and administer, collect, and enforce any taxes imposed under the Act.

2. September 1, 1983. The Act was extensively amended by 1983 Tex.Gen.Laws, ch. 575, §§ 1–27, at 3443–74, including the following: Section 11(k) was added: "A game of chance other than bingo may not be conducted or allowed during an occasion when bingo is played"; section 13(b), quoted above, was amended to bring it in line with the aggregate prize limit contained in section 11(f); section 16 was amended to give the Comptroller substantial rule-making authority, including the following in section 16(f): "The comptroller shall by rule establish the number and type of bingo games which may be played during an occasion"; section 18 was amended to add the following:

Only one bingo occasion per day may be conducted under each license issued under this Act. No more than two organizations may conduct a game of bingo in one place on one day. If two organizations conduct games of bingo in one place on one day, these occasions must be announced separately, and an intermission of at least 30 minutes must occur between the games;

section 19a was added requiring each licensee to establish a special "bingo account" and providing, "Deposits must be made no later than the next business day following the day of the bingo occasion on which the receipts were obtained."

3. May 16, 1984. The Comptroller issued rules interpreting the Act. Rule 3.544, 34 Tex.Admin.Code § 3.544, defined "bingo occasion" as "[a] single gathering or session at which a series of successive bingo games are played," and defined "Operator" as follows:

The active bona fide member or members of a licensed organization designated as the person or persons in charge of and primarily responsible for each bingo occasion. The operator must supervise all activities and be responsible for the conduct of all bingo games on the occasion of which he or she is in charge. He or she must be present on the premises continually during the occasion;

Rule 3.548(q), 34 Tex.Admin.Code § 3.548(q), now 3.548(g), provided as follows:

*Multiple bingo occasions.* No more than two organizations may be licensed to conduct bingo at the same location on the same day. If two organizations are licensed to conduct bingo at the same location on the same day, there must be a minimum 30–minute break or intermission between each organization's occasion. The operator or caller must announce prior to the start of the occasion the name of the organization that will be conducting bingo for that session. If two or more licensed organizations are conducting bingo at the same location, a person may not at any time be required to purchase cards for more than one bingo session.

4. September 1, 1987. The Act was amended by 1987 Tex.Gen.Laws, ch. 478, §§ 1–11, at 2085–88, including the addition of section 11(p), which prohibited licensees from advertising "the amount of a prize or series of prizes offered at a bingo occasion," and section 11(q), which provided as follows:

A licensed authorized organization or other person may not award or offer to award a door prize or other prize to persons present at a bingo occasion or participating in a bingo occasion in addition to the prizes awarded for winning the individual bingo games.

5. October 5, 1987. The Comptroller issued and adopted, on an emergency basis, 34 Tex.Admin.Code § 3.562 (12 Tex.Reg. 3632), which provided as follows:

(a) Definitions....

\* \* \* \* \* \*

(2) Present at a bingo occasion and participating in a bingo occasion—Being present at or participating in any activity at the bingo location during licensed times of a bingo occasion.

(b) Extra prizes prohibited. No authorized organization, lessor, or other person, may offer or award any prize to any

person or persons present at a bingo occasion or participating in a bingo occasion other than, or in addition to, the prizes awarded for winning the individual bingo games. This prohibition extends to the offering or awarding of a prize or prizes, other than prizes for winning bingo games authorized under the Bingo Enabling Act during an organization's licensed times, and includes any activity during licensed times in connection with the offering or awarding of such prizes....

6. January 14, 1988. The Attorney General issued Opinion No. JM–844, regarding whether a door prize may be awarded during an intermission "between bingo games." The opinion concluded, initially, that the phrase "bingo occasion" "includes the time during which people are gathered for the purpose of playing bingo, including times before, during, between, and after bingo games." With respect to the 30–minute intermission required by section 18 of the Act, the opinion stated the following:

Section 18 refers to the events conducted under different licenses as "separate occasions," but it requires a thirty-minute intermission between "games." The fact that thirty minutes must separate the "games" in one occasion from games in another occasion does not mean that thirty minutes must separate the "occasions." Again, "occasion" refers to a gathering for the purpose of playing bingo and it encompasses more than just the time actually spent playing bingo. The question of when any particular "occasion" begins and ends is a question of fact. It seems likely, though, that two "occasions" would overlap if they were conducted in the same place on the same day and if the last bingo game of one occasion were separated from the first bingo game of the other occasion by only half an hour. Thus, the thirty-minute hiatus in game-playing is likely to be part of at least one of the bingo occasions, if not both. In such circumstances, section 11(q) would prohibit the offering or awarding of a door prize.

The opinion concluded by criticizing the October 5, 1987, Comptroller's emergency Rule 3.562 for its statement that the prohibition applied "during licensed times of a bingo occasion."

7. January 19, 1988. The Comptroller issued and adopted, on an emergency basis, new Rule 3.562, 34 Tex.Admin.Code § 3.562, which changed the definition of "present at a bingo occasion and participating in a bingo occasion" to read as follows:

Being present at or participating in any activity at the bingo location during the time when people are gathered for the purpose of playing bingo, including times before, during, between, and after bingo games.

Appellant was issued a citation for awarding a door prize during a 30–minute intermission on February 16, 1988.

It is clear that, before the issuance of Attorney General Opinion No. JM–844, the Comptroller interpreted "bingo occasion" as synonymous with "series of games" and "session," both of which must, by law, be conducted within an organization's licensed hours.

We think that Opinion No. JM–844 is correct in its conclusions that the time when a particular "bingo occasion" begins and ends *may* be a question of fact, and that a "bingo occasion" may include times before, during, between, and after individual bingo games. We disagree, however, that a lawful "bingo occasion" may ever extend outside the licensed hours within which the licensee is authorized to conduct bingo games. For one thing, at times before and after the licensed hours, any people present cannot be, at that moment, "gathered for the purpose of playing bingo." They may be *waiting* for the time when they can play bingo, or they may be milling around *after* the time when they could play bingo has ended, but they are not *then* gathered for the purpose of playing bingo. Second, as stated above, the definitions of the word "occasion" seem to connote discernible beginning and ending points. If a "bingo occasion" could extend outside the licensed hours, however, there would be no logical, consistent method for

determining when the occasion began and when it ended.

The Comptroller's use of the term "session" comes closer, we believe, to capturing the Legislature's intended meaning for "occasion." For example, the Act speaks in terms of "conducting" a bingo occasion. This gives a more definitive and formal flavor to "bingo occasion," indicating that the Legislature was using the term to mean something more definite and identifiable than merely a "gathering." One does not *conduct* a "gathering"; one may, however, conduct a "session."

It should also be noted that section 18 of the Act speaks in terms of a bingo occasion being conducted "under [a] license." Pursuant to section 15(a), however, each license must indicate the specific time when that licensee may conduct games of bingo.

■ "It is presumed in construing statutes that several acts or provisions relating to the same subject were intended to be consistent and to operate in harmony." *Willaby v. State,* 698 S.W.2d 473, 477 (Tex. App.1985, no pet.). "A statute must be construed as a whole, consistent with a reasonable application thereof, and the object sought to be obtained." *Thomas v. State,* 144 Tex.Crim. 533, 164 S.W.2d 852, 855 (1942). We find that the Legislature intended "bingo occasion" to mean the time during which a series of successive bingo games is conducted by an organization within the licensed operating hours during which it is authorized to conduct such games.[1]

■ In so holding, we decline to follow Attorney General Opinion No. JM–844. An interpretation by the Attorney General is often given considerable weight, but need not be adopted when contrary to the intention of the Legislature as disclosed by the provisions of the act. *Eddins–Walcher Butane Company v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (1957). "Attorney General opinions are not statutory themselves...." *Bullock v. Enserch Explora-*

*tion, Inc.,* 614 S.W.2d 215, 220 (Tex.Civ. App.1981, writ ref'd n.r.e.), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1445, 71 L.Ed.2d 659 (1982).

Even if it could be said that the meaning of "bingo occasion" in the Act were vague or ambiguous, it is a well-established rule that a statute which is arguably vague may be given constitutional clarity when aided by the standard rules of statutory construction. *Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Cr.App.1978). Penal statutes must be "strictly construed, for one may not presume that the Legislature intended that the punishment authorized therein should extend beyond what is expressly stated." *Carbide International, Ltd. v. State,* 695 S.W.2d 653, 659 (Tex.App.1985, no writ). One noted commentator has expressed the distinction between strict and liberal construction as follows:

> "Liberal" is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts. What is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction. "A strict construction is one which limits the application of the statute by the words used." [Citation omitted.]

2A Singer, *Sutherland Statutory Construction* § 58.02, at 708–09 (4th Ed.1984).

Strict construction of a penal statute is necessary because the person subject to a penal statute must be given fair notice as to what conduct is prohibited so that the person may conform his conduct to that allowed by the statute and thereby avoid the penalty permitted to be imposed. *Carbide,* 695 S.W.2d at 659. In that vein, the court of criminal appeals has stated:

> A forbidden act must come clearly within the prohibition of the statute and *any doubt as to whether an offense has been committed should be resolved in favor of the accused.*

---

**1.** This would not necessarily mean that a "bingo occasion" must always *coincide* with the organization's licensed hours, since it might be pos-

sible to show that a particular occasion began late or ended early.

*Bruner v. State*, 463 S.W.2d 205, 215 (Tex. Cr.App.1970) (emphasis added). The awarding of a door prize outside of the licensed bingo hours does not clearly come within the Act's prohibition.

Hence, a strict construction of the Act would require us to reach the same result: the Legislature did not intend for the phrase "present at a bingo occasion or participating in a bingo occasion" to include times outside an organization's licensed hours for conducting bingo games.

■ Accordingly, whether arrived at by looking simply at the plain meaning of the terms used or by strictly construing the Act, we hold that the evidence conclusively shows that Lyon did not violate section 11(q) of the Bingo Enabling Act. She awarded a door prize to a person during the intermission separating two different bingo occasions. Thus, she did not award a prize to a party *present* at a bingo occasion, for the first bingo occasion had concluded and the second bingo occasion had not yet started. Nor did she award a prize to a party *participating* in a bingo occasion. "Participating" is the present participle of the verb "participate," and indicates the then-existing state of the action. At the time the door prize winner was awarded her prize, she was not presently participating in a bingo occasion.

In light of our holding, we need not address appellant's fourth point of error attacking the constitutionality of section 11(q).

For the reasons stated, the judgment of conviction is reversed and reformed to reflect an acquittal.