### MILLS COUNTY V. BROWN COUNTY.
#### No. 257.

**1. Title of Bill—One Subject—New County.**

The provisions of chapter 96, Laws Twenty-third Legislature, page 124, relate to one subject matter, and that is expressed in its title, which is, "An act to provide for the payment by new counties of their proportionate share of the indebtedness of the older counties from which they were created"..... 483

**2. New County.**

A county which has been taken from another, whatever its age, may properly be called a *new county* with reference to such other; and the act applied to such new counties created before as well as those subsequently created.... 483

**3. Venue—New County—Adjusting Debts of Old County.**

The said act conferring jurisdiction in either county of suits by old county to recover the proportional part of its debt from the new county is valid. The District Court of Brown County had jurisdiction of a suit brought by that county against Mills County under the statute. Mills County was created prior to said act, in part from Brown County........................... 483

**4. Constitution—New Counties—Liabilities.**

Chapter 96, Twenty-third Legislature, page 124, an act to provide for the payment by new counties of their proportionate share of the indebtedness of the older counties from which they were created, is authorized by section 1 of article 9 of the State Constitution............... .................. 484

**5. Liabilities of Old County to be Shared by New.**

In section 1, paragraph 2, of article 9 of the Constitution, it is provided that "when any part of a county is stricken off and attached to or created into another county, the part stricken off shall be holden for and obliged to pay its proportion of all the liabilities then existing of the county from which it was taken, in such manner as may be prescribed by law." This language is definite in its terms, and leaves no room for construction. "All the liabilities" definitely comprehend the whole, and preclude the idea that any abatement or equitable adjustment between the two counties was contemplated. The Legislature is not authorized to allow to new counties credit for their proportional share of the public property belonging to the parent counties........................ ............. ................ 484

**6. Double Taxation—Constitution.**

Section 1, article 8, of the Constitution declares, that "taxation shall be equal and uniform." This seems to be modified in the special provision in section 1, article 9, above cited. This being special in character, it operates

as an exception limiting the scope of the general provision. It was there-
fore competent to impose upon that part of Mills County taken from Brown
County by taxation the burden of paying the proportionate liabilities ascer-
tained by suit.................................................................... 484

7. Liabilities—New County.

A two-thirds vote of each house of the Legislature is not required to enact a
law prescribing the manner of enforcing the liability of a new county for
its proportionate part of the debts of the old. It is not required by section
1, article 9 of the Constitution ............................................... 484

8. Case Adhered to—Adjusting Liabilities of New County.

Mills County v. Brown County, 85 Texas, 391, adhered to. The rule for ad-
justing the share of the Brown County debt for which Mills County was
liable, announced in this case, was given in the Act of the Legislature above
cited. Whether the amount of liability be a legislative or judicial question
is immaterial. It was not error to refuse to allow in offset the proportional
value of the public buildings, etc., retained by the old county............. 484

9. Constitution.

The Legislature did not exhaust its authority to legislate upon the subject of
ascertaining the pro rata share of liabilities between the old and the new
counties by the passage of the Act of March 15, 1887, which was declared
unconstitutional .. .... .......................................... 485

10. Statute of Limitations—Inability to Sue.

The Legislature not having prescribed by a valid act the manner in which Mills
County should be obliged to pay its part of the debts of Brown County, the
latter was unable to bring a suit to enforce the obligation. Limitation
against such claim did not begin until the passage of the law in question.. 485

11. Power of District Court to Order Levy of Tax.

The District Court of Brown County in rendering judgment in suit for its pro-
portional liability had the authority to require the Commissioners Court of
Mills County to levy a tax upon the property embraced in the territory of
Mills County that was taken from Brown County to pay off such judgment, 485

CERTIFIED QUESTIONS from Court of Civil Appeals for Third District, in an appeal from Brown County.

The questions certified are here given:

"This is a suit instituted under authority of the Act of the Twenty-third Legislature, page 124, by Brown County, to recover of Mills County its proportionate share of the indebtedness of Brown County. The territory comprising Mills County was, by the Act of March 15, 1887, taken from the counties of Brown, Comanche, Hamilton, and Lampasas.

"The Court of Civil Appeals for the Third Supreme Judicial District of Texas certifies to the Supreme Court of Texas the following questions, which arise in the above styled and numbered cause:

"1. Is the Act of the Twenty-third Legislature, page 124, unconstitutional for the following reasons:

"(1) Because it embraces more than one object which is not expressed in the title?

"(2) Because all the objects of the act are not expressed in the title?

"(3) Does the act confer jurisdiction upon the District Court of Brown County? Is Mills County, which was created and organized prior to the passage of the act in question, embraced within the meaning of the act?

"2. Is the act in question authorized by section 1, article 9, of the Constitution of the State of Texas?

"3. Does the term 'liabilities,' used in the second subdivision of section 1, article 9, of the Constitution, authorize the Legislature to fix the liability of Mills County under the act in question for the amount of the proportionate share of the indebtedness of Brown County that the evidence may show the territory taken from Brown County and placed in Mills County was liable for, without authorizing Mills County to interpose the defense, as an offset against the claim of Brown County, of the value of the permanent improvements, such as court houses, jails, and bridges, that are remaining within the limits of Brown County and now controlled and used by it? In other words, has the Legislature the authority, under the provisions of the Constitution cited, by the Act of the Legislature in question, to fix an absolute liability against Mills County for the proportionate share of the indebtedness of Brown County, without giving Mills County credit for the value of the permanent improvements, such as court houses, jails, and public bridges, now retained and used by Brown County, and can Mills County urge in defense to the claim of Brown County the value of the improvements so named?

"4. Is the Act of the Legislature in question unconstitutional, because it conflicts with section 1, article 8, of the Constitution of Texas, in that it would impose upon Mills County a double taxation, and violate that provision of the Constitution that requires that taxation shall be equal and uniform?

"5. Does section 1, article 9, of the Constitution of Texas, in order to make the law in question valid, require that it shall be passed by a two-thirds vote of each house of the Legislature; and if such is the case, have the trial court and this court the power to hear evidence on this question and look to the journal of the Legislature to ascertain whether this law was or was not so passed?

"6. Is the term 'all the liability then existing of the county from which it was taken,' used in the second subdivision of section 1, article 9, of the Constitution, a matter that the Legislature could properly determine, or is it a judicial question that can only be passed upon and determined by the courts? And if it is a judicial question, was it error for the trial court to refuse to give Mills County credit for the value of the court houses, jails, and public bridges heretofore constructed and now used by Brown County; and if the value of these

improvements was greater than the evidence shows to be the liability of Mills County for its proportionate share of the indebtedness of Brown County, would this fact extinguish the debt and liability of Mills County.

"Under this question, the facts show that the proportionate share of the liability of Mills County for the indebtedness due Brown County, without giving it (Mills County) any credit, was $17,694.73 (for which amount the court rendered judgment against Mills County), which was determined to be the proportionate share due by Mills County for an indebtedness due by Brown County, existing when Mills County was created, of $43,500 for court house bonds and $12,000 for bridge bonds.

"7. If the Legislature had previously attempted to pass a law putting into effect the second subdivision of section 1, article 9, of the Constitution—which they did by the Act of March 15, 1887, and which was declared unconstitutional in the case of Mills County v. Brown County, 20 Southwestern Reporter, 21—had the Legislature the authority to pass the present law under which this suit was brought? In other words, does the passage of the first law exhaust the legislative authority in the premises?

"8. The claim of Brown County upon which this suit was based was presented to Mills County more than four years prior to the filing of this suit, which claim Mills County rejected and refused to pay. Was the claim barred by limitation?

"9. Had the District Court of Brown County, in rendering judgment in this case against Mills County, the authority to require the Commissioners Court of Mills County to levy a tax upon the property embraced in the territory of Mills County that was taken from Brown County, to pay off the judgment rendered by that court in favor of Brown County?"

*Triplett & Doughty* and *Lewis & Anderson*, for appellant.—1. A county must be sued in a court of competent jurisdiction within its own boundaries; and unlike an individual, it can not waive jurisdiction, and the Legislature can not by a retroactive law give jurisdiction. Rev. Stats., art. 1198, par. 17; Id., art. 1556, par. 3; 4 Am. and Eng. Encyc. of Law, p. 270, par. 6.

The venue must be fixed by general law (Constitution, article 3, section 45), and laws changing venue must be general. Id., sec. 56. This law is special in its application, and regulates both the affairs of counties and the jurisdiction.

2. The laws of the Twenty-third Legislature (page 124, chapter 96), entitled "An act to provide for the payment by new counties of their proportionate share of the indebtedness of the older counties from which they were created," confers no jurisdiction on the District Court of Brown County, for the following reasons:

(1) Because the caption gives no notice that jurisdiction is embraced in the law, nor does the act attempt to appeal or amend article 1198 of the Revised Statutes of the State of Texas.

(2) Because the said act attempts to give jurisdiction to the District Court, regardless of amount involved.

(3) Because Mills County, the defendant herein, is not a new county as described in said caption of said act, upon which said act can take effect in accordance with the caption thereof.

(4) Because said act attempts to legislate upon matters not embraced within its caption, as follows: first, counties heretofore created, and which are not now new counties; second, there is no such portion of territory known to the laws of Texas as excised territory; third, it attempts to deprive a county heretofore created of its right to be sued within that county, leaving it optional with the county suing in which county it will sue; fourth, it gives the court jurisdiction to make any order in contravention to articles 676, 677, and 679 of the Revised Statutes; fifth, it attempts to change the rules of evidence known to the laws of Texas at the time of the creation of Mills County, the defendant herein, and at the time the liability accrued, if any did accrue, for which this suit was brought.   Const., art. 5, sec. 3.

3. In construing a statute of the State of Texas, the title of the act should be consulted to aid in its interpretation, and under the Constitution of Texas it becomes a part of the act, and may confine the effect and operation of the words in the enacting clause to the objects expressed in the title.   Rev. Stats., art. 1198, sec. 17; Id., art. 1556, sec. 3; Act 20th Leg., p. 25 (creating Mills County); Const., art. 35, sec. 3; 23 Am. and Eng. Encyc. of Law, p. 329; Id., p. 229, sec. 6, subdiv. 3; Id., p. 232; Acts 23rd Leg., p. 124; Cool. Const. Lim., pp. 141–150, secs. 81–83.

4. The second paragraph of section 1 of article 9 of the Constitution is not self-enforcing, and the said article creates no right on the part of the parent county; and neither fixes nor declares any liability on the new county; and said article is merely directory to the Legislature to equitably adjust the liabilities between the two and ascertain the amount due by the new county; or to prescribe an equitable rule by which the same may be ascertained. ·

5. In giving force and effect to paragraph 2 of section 1 of article 9 of the Constitution, the Legislature can not arbitrarily or oppressively adjust the liabilities between the old and the new counties, but must equitably adjust them.   The word liabilities is taken in its ordinary sense, and the liabilities must be adjusted on an equitable basis—the old county assuming the indebtedness for the county property which was purchased for its exclusive use and benefit, and which on the division of the county it retains.   Const., art. 9, sec. 1; Act 20th Leg., p. 25 (creating Mills County); Act 23rd Leg., p. 124 (providing for

payment by new counties); Trinity County v. Polk County, 58 Texas, 321; Mills County v. Brown County, 20 S. W. Rep., 81; Commissioners v. Commissioners (Montana), 11 Am. and Eng. Corp. Cases, 1; Laramie County v. Albany County, 92 U. S., 307; 4 Am. and Eng. Encyc. of Law, 353; 85 Am. Dec., 101; Cool. Const. Lim., 232; Hampshire v. Franklin, 16 Mass., 76; Windham v. Portland, 4 Mass., 390.

6. It is the duty of the Legislature to adjust all matters growing out of a change of county boundaries, and all questions of liability in the act of creating the new county. Const., art. 9, sec. 1; Mills County v. Brown County, 85 Texas, 391; Laramie County v. Albany County, 92 U. S., 307; 4 Am. and Eng. Encyc. of Law, 353; Hampshire v. Franklin, 16 Mass., 76; Craft v. Lofinch, 11 Am. and Eng. Corp. Cases, 21; Windham v. Portland, 4 Mass., 390.

7. The Constitution having clothed the Legislature with the duty, in creating a new county out of older counties, of ascertaining and fixing its proportion of the liabilities of the older counties, and of prescribing by law for its payment, therefore the affirmative legislation in the creating act exhausts the legislative authority, and is a finality between the old and the new county. Const., art. 9, sec. 1; Laramie County v. Albany County, 92 U. S., 307; 4 Am. and Eng. Encyc. of Law, 353; Commissioners v. Commissioners, 11 Am. and Eng. Corp. Cases, 1; Hampshire v. Franklin, 16 Mass., 76; Windham v. Portland 4 Mass., 390; State v. Dougherty, 5 Texas, 1; Rogers v. Kennard, 54 Texas, 30.

8. Affirmative legislation contained in an act, on another and different subject than that contained in the title of the act, is void. Const., art. 3, sec. 35; 23 Am. and Eng. Encyc. of Law, p. 229, sec. 6; Cool. Const. Lim., pp. 141-150, secs. 81-83.

9. Courts can have no further power than to render judgment; or in other words, to audit the claim which the Commissioners Court has refused to audit or allow. Const., art. 5, sec. 18; Id., art. 3, sec. 56; Rev. Stats., art. 1198, sec. 17; Id., arts. 676, 677, 679.

10. To give force and effect to said laws of the Twenty-third Legislature would not be legal and uniform taxation, and would be in conflict with section 1 of article 8 of the Constitution of Texas, which ruling was excepted to and the exception noted in the record. Const., sec. 1, art. 8.

11. A liability can not be fixed upon a county by mere legislative enactment, where the county has received no benefit and there is no moral obligation. Commissioners v. Commissioners, 11 Am. and Eng. Corp. Cases, 1; Craft v. Lofinch, 11 Am. and Eng. Corp. Cases, 21, and note, pp. 33, 36; Cool. Const. Lim., 232; Hampshire v. Franklin; 16 Mass., 76; Windham v. Portland, 4 Mass., 390; 1 Dill. Mun. Corp., sec. 75; Railway v. Minnesota, 10 Sup. Ct. Rep., 20, p. 473; Railway v. Minnesota, 10 Sup. Ct. Rep., 20, p. 462; Reagan v. Loan and Trust

Co., 14 Sup. Ct. Rep., 33, p. 1047, and the companion cases of 1060, 1062.

12. The second paragraph of section 1 of article 9 of the Constitution is a limitation upon the Legislature, requiring the Legislature to equitably ascertain the proportion of liabilities to be paid by the new county, and to define the term liability, and then prescribe by law for its payment. The Act of 1893 simply follows the language of the Constitution without giving it force and effect by affirmative legislation, determining what was the proportion of the liability to be paid. Laramie County v. Albany County, 92 U. S., 307; 4 Am. and Eng. Encyc. of Law, 353; Cool. Const. Lim., 232; Dill. Mun. Corp., sec. 75; Hampshire v. Franklin, 16 Mass., 76; Windham v. Portland, 4 Mass., 390; Craft v. Lofinch, 11 Am. and Eng. Corp. Cases, 21, and notes; Custer County v. Yellowstone County, 11 Am. and Eng. Corp. Cases, 1.

13. There is no authority in the act creating Mills County to audit and allow said claims, or to pay the same, and the act of the Twenty-third Legislature, page 124, chapter 96, section 3, does not give such authority as to counties heretofore created (nor was this defendant, but only allows the commissioners of newly created counties). 4 Am. and Eng. Encyc. of Law, 353; Windham v. Portland, 4 Mass., 390; Hampshire v. Franklin, 16 Mass., 76; Craft v. Lofinch, 11 Am. and Eng. Corp. Cases, 21, and note, pp. 33, 36; 16 Am. and Eng. Encyc. of Law, 489; Webster's Dic.

. 14. It required a two-thirds vote of each house of the Legislature, called by ayes and nays and spread upon the journal, to fix the liability upon Mills County. Act 20th Leg., p. 25 (creating Mills County); Const., art. 9, sec. 1; 23 Am. and Eng. Encyc. of Law, p. 229, sec. 6; Id., p. 168, sec. 4; Id., p. 171, sec. b; Const., art. 3, sec. 35; Cool. Const. Lim., 140, 141.

15. When the Legislature has once given force and effect by affirmative legislation to a provision of the Constitution which is not self-enforcing, and creating no right and fixing no obligation, another law, ignoring the previous affirmative legislation upon the same provision, and attempting to give force and effect to such provision, is without constitutional authority and is void, and it is error for a court to give such latter law force and effect. Hampshire v. Franklin, 16 Mass., 76; Windham v. Portland, 4 Mass., 390; Craft v. Lofinch, 11 Am. and Eng. Corp. Cases, 21, and note, pp. 33, 36; Trinity County v. Polk County, 58 Texas, 321; Cool. Const. Lim., 232; 4 Am. and Eng. Encyc. of Law, 353; Const., art. 9, sec. 1; Id., art. 3, sec. 36.

16. A claim of one county against another county for its share of the liabilities of the creditor county on account of the division of the two, is barred by the statute of limitations if not sued on within four years from the time when the claim is presented to and rejected by the Commissioners Court of the debtor county. Rev. Stats., art. 3203.

*H. H. Moore* and *Bell & Bell*, for appellee.—1. The Legislature has the right to amend the general statute fixing the venue whenever it sees proper so to do, and has exercised that right frequently since the first law of venue was enacted. .Perry County v. Conway County, 12 S. W. Rep., 877; 1 Dill. Mun. Corp., secs. 185, 187, 189; City of New Orleans v. Clark, 95 U. S., 644.

2. The Legislature is clothed by the Constitution with the duty of fixing the proportion of the indebtedness of new counties, and of prescribing by law for the payment thereof. It ought to be done at the time of the act creating the county, but it may be done at any time thereafter whenever the Legislature finds the moral obligation to exist. Morris & Cummings v. The State, 62 Texas, 741; De Cordova v. Galveston, 4 Texas, 470; Guilford v. Chenango County, 13 N. Y., 143; Smith on Const. Con., p. 387, sec. 354; Perry County v. Conway County, 12 S. W. Rep., 377; 1 Dill. Mun. Corp., p. 387, secs. 175, 187, 189; City of New Orleans v. Clark, 95 U. S., 644.

3. Counties are corporations properly denominated public, for the reason that they are but part of the machinery employed in carrying on the affairs of the State; and their charters may be changed, modified, repealed, or abrogated whenever the Legislature sees fit so to do. They may be divided; their property apportioned, and the burdens placed in such manner as to the Legislature may seem reasonable and equitable. The power of the Legislature over such corporations is absolute and illimitable. Laramie County v. Albany County, 92 U. S., 310–312; School Society v. School Society, 14 Conn., 469; Hampshire v. Franklin, 16 Mass., 76; Bridge Company v. East Hartford, 16 Conn., 172; Montpelier v. Montpelier, 29 Vt., 20; Sill v. Corning, 15 N. Y., 197; Mayor v. The State, 15 Md., 376; Ashby v. Wellington, 8 Pick., 524; Denton v. Jackson, 2 Johns. Ch., 320; Granby v. Thurston, 23 Conn., 410; Yarmouth v. Skillings, 45 Me., 142; Langworthy v. Dubuque, 16 Iowa, 273.

4. The former suit, which was reversed and dismissed by the Supreme Court of Texas because Brown County had no remedy and no right to sue, is not res adjudicata, because Brown County had no right, had no remedy, to bring suit. Town of Guilford v. Chenango County, 13 N. Y., 143.

5. The first suit of Brown County v. Mills County, which was reversed and dismissed in the Supreme Court, is not res adjudicata, and is not final and conclusive, because not based upon the merits. 21 Am. and Eng. Encyc. of Law, 266; Hughes v. United States, 4 Wall., 232; Gould v. Railway, 91 U. S., 526; 63 Texas, 604; 48 Texas, 509; 71 Texas, 352; 30 Texas, 596; 35 Texas, 595; Gullman v. Rives, 35 U. S., 433.

6. The statute of limitations never begins to run until the plaintiff might have brought his suit. This is elementary, and we cite no authorities; but merely remark, that the Supreme Court has decided that

Brown County never had a remedy, and had no right to sue until ninety days after the adjournment of the Twenty-third Legislature.

GAINES, CHIEF JUSTICE.—1. The first section of the act in question provides, in effect, where any county has been created or may thereafter be created out of any other county or counties, its proportion of the indebtedness of the old county existing at the time of its creation shall be the same as its taxable values at the time bear to the taxable values of the parent county; that a suit may be brought to recover the same in the District Court of either county, and that the court shall have power to make any order necessary to enforce its judgment. The second section provides, that the assessment rolls of the original county for the year in which the new county was created shall be conclusive evidence of the value of the taxable property in the respective counties, unless assessment rolls for the newly organized county shall have been made out in the same year, in which event the latter shall be the evidence of the taxable values of that county. Section third provides, that suits brought under the act shall have precedence in the courts, and in case of a recovery by the plaintiff, makes it the duty of the Commissioners Court of the new county to levy a tax for the payment of the judgment. The fourth section contains merely a declaration of emergency, for the purpose of suspending the rules, and of putting the act in force from the time of its passage. These provisions all relate to one subject matter, and we are of opinion that that subject is sufficiently expressed in the title, which reads as follows: "An act to provide for the payment by new counties of their proportionate share of the indebtedness of the older counties from which they were created." The contention seems to be, that the words "new counties" indicate a purpose to embrace within the provisions of the act only such counties as should be created after the law had taken effect, and therefore that the title is not broad enough under section 35 of article 3 of the Constitution to warrant the Legislature in making the act applicable to counties which had been created before its passage. But to this proposition we do not assent. As was suggested in the argument, "new" is a relative term. We have a striking illustration of this fact in the case of the holy scriptures. The canonical books which appeared upon the advent of the Christian era, though now nearly twenty centuries old, are known in group as "the new testament," in contradistinction to the former canonical books, which are known together as "the old testament." A county which has been taken from another, whatever its age, may properly be called a new county with reference to such other.

We think the law valid, that it embraces within its provisions Mills County, and that it confers jurisdiction over the controversy upon the District Court of Brown County.

2. We are clearly of the opinion that the act in question is authorized by section 1 of article 9 of the Constitution of this State.

3. That provision in the section of the Constitution mentioned in the question here propounded reads as follows: "When any part of a county is stricken off and attached to or created into another county; the part stricken off shall be holden for and obliged to pay its proportion of all the liabilities then existing of the county from which it was taken, in such manner as may be prescribed by law." This language is definite in its terms, and leaves no room for construction. It makes it the imperative duty of the Legislature to provide a method by which a new county may be forced to pay its proportionate part of the indebtedness of the old, existing at the time of its creation. "All the liabilities" definitely comprehend the whole, and preclude the idea that any abatement or equitable adjustment between the two counties was contemplated. Besides, there is not a word in the entire section which even tends to evidence a different intention. We conclude, that the Legislature in passing the act in question acted in strict pursuance of the constitutional provision which has been quoted; and that it was not authorized to allow the new counties credit for their proportionate share of the value of the public property belonging to the parent counties.

4. We think the act in question is constitutional. If it be conceded that the provision quoted from section 1, article 9, would be in conflict with section 1 of article 8, which declares, that "taxation shall be equal and uniform," it does not follow that provision is inoperative. Being parts of the same instrument, both provisions must stand; and the provision which makes a new county liable for a part of the indebtedness of the county from which it was created, being special in character, should operate as an exception limiting the scope of the general provision in regard to uniformity of taxation.

5. We are of opinion that it did not require a two-thirds vote of each house of the Legislature to give validity to the act. In order to create a new county from an old of a less area than 900 square miles or to reduce the area of an existing county below that limit, a two-thirds vote is demanded; but no such limitation is imposed in reference to prescribing the manner of enforcing the liability of a new county for its proportionate part of the debts of the old.

6. The effect of the decision in Mills County v. Brown County, 85 Texas, 391, is to hold, that what should be a proportionate share of the liabilities was not a legislative question. But we deem this unimportant. The opinion in that case lays down the rule by which the share shall be determined, and the Legislature in the act in question has announced the same rule. So, however we may look at it, it was not error for the court to refuse to allow Mills County credit for its

proportionate part of the value of the court house, jails, and public bridges belonging to Brown County.

7. We think the Legislature did not exhaust its authority to legislate upon the subject by the passage of the Act of March 15, 1887, which was declared unconstitutional in the case cited above, between these same parties.

8. The Legislature never having prescribed by a valid act the manner in which Mills County should be obliged to pay its part of the debts of Brown County, the latter was unable to bring a suit to enforce the obligation, and therefore the statute of limitation did not begin to run against it until the passage of the law in question.

9. The act in question prescribes, that "if the plaintiff shall recover, it shall be the duty of the Commissioners Court of the newly created county to levy a special tax on all property in the territory taken from the plaintiff county, sufficient to pay off the judgment; and if the first levy be insufficient, to make said levy annually till the judgment is satisfied; and the judgment of the court shall order said Commissioners Court to make such levies." This provision expressly confers authority upon the court in which the judgment is rendered to make the order for the levy of the tax, and we see no good reason to doubt the validity of the provision.

If the question be as to the power of the court to direct the levy to be made upon that part of the new county which was taken from the old, we answer that the provision just quoted in effect provides that the levy shall be so ordered, and that the provision formerly quoted from section 1 of article 9 of the Constitution expressly declares, that it is "the part stricken off" that "shall be holden for and obliged to pay its proportion" of the liabilities of the old county.

Delivered February 4, 1895.