**SOUTH TEXAS COLLEGE OF LAW and Texas A & M University,**
Appellants,

v.

**TEXAS HIGHER EDUCATION COORDINATING BOARD,**
Appellee.

No. 03–99–00453–CV.

Court of Appeals of Texas, Austin.

Nov. 30, 2000.

Rehearing Overruled Feb. 28 and April 19, 2001.

**132**

Douglas W. Alexander, Scott, Douglass & McConnico, L.L.P., Austin, for South Texas.

Shannon H. Ratliff, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for Texas Higher.

Mary Schaerdel Dietz, Fulbright & Jaworski, L.L.P., Austin, for Texas A & M.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

MARILYN ABOUSSIE, Chief Justice.

Appellants South Texas College of Law ("South Texas") and Texas A & M University ("A & M") appeal from a summary judgment declaring their Affiliation Agreement void and enjoining them from acting, or purporting to act, under the Agreement. We will affirm the trial court's judgment.

## BACKGROUND

On January 23, 1998, appellants entered into an "Agreement for Exclusive Affiliation between South Texas College of Law and Texas A & M University" ("Affiliation Agreement" or "Agreement"). The Agreement's preamble states that A & M is a public institution of higher education "offering courses of study and degrees in a broad range of undergraduate academic pursuits, but with no specialized curriculum for the teaching of law and granting of degrees in that field." South Texas is a free-standing, private institution offering only law degrees. According to the Agreement, A & M "believes that an exclusive affiliation with [South Texas] would further [A & M's] goals and missions by broadening its coverage of the academic disciplines and by providing a means for interdisciplinary study programs." Finally, the Agreement notes that the Education Code "provides that the Texas Higher Education Coordinating Board shall consider, enlist and encourage cooperation and cooperative undertakings between public and private institutions of higher education" and recites A & M and South Texas's belief that the affiliation will promote the best interests of each institution and "will promote the best interests of higher education in the State of Texas through the strategic utilization of public sector assets, talents and goals."

The substantive portion of the Agreement provides:

( 1) South Texas has limited use of the A & M name and logo, subject to certain restrictions.

( 2) The Affiliation will not (a) change the private independent status of South Texas, (b) merge South Texas into A & M, (c) entitle South Texas to public funds or property to which it was otherwise not entitled, or (d) restrict the authority of South Texas's board of directors.

( 3) Both parties will cooperate in obtaining all necessary approvals.

( 4) A & M will control six of the nineteen seats on South Texas's board of directors and two of the six seats on the board's executive committee and have power to appoint a member of South Texas's admissions committee. A & M will also be entitled to receive prior written notice and an opportunity to comment on nomination and election of South Texas's board of directors.

( 5) South Texas through its board, president, dean, and faculty will remain responsible for all management, operating, financial, academic, admissions, and faculty decisions. But A & M's provost will be given written no-

tice and an opportunity to comment on full-time faculty appointments.

( 6) A & M's provost will be entitled to make comments and express concerns to South Texas's dean and president regarding all tenure candidates who are hired after the effective date of the Agreement before the dean and president can make recommendations to the board.

( 7) A & M and South Texas will each appoint an equal number of persons to an operating committee that will meet at least twice a year "to discuss matters of mutual interest to such affiliated institutions including without limitation joint degrees, combined degrees, certification programs and foreign programs."

( 8) A & M and South Texas will each appoint an equal number of persons to an affiliation committee that will meet as needed to "discuss all areas of prospective sharing between the affiliated institutions, including without limitation: technology, libraries, development and joint and combined degree plans."

( 9) Following an initial twenty-year term, either party may end the affiliation three years after giving written notice.

(10) South Texas will provide A & M with access to audited financial statements.

(11) A & M promises to use its best efforts to convince the A & M former students' association to allow South Texas's former and future graduates to become members.

(12) A & M promises to use its best efforts to convince A & M's University Foundation to assist and coordinate with South Texas's development office in fund-raising and similar projects. South Texas agrees that its development office will cooperate.

(13) A & M agrees to coordinate its public relations activities with South Texas.

(14) A & M agrees to give South Texas office space and personnel for a coordinating office on the A & M campus. South Texas agrees to make similar arrangements if A & M requests them.

(15) A & M's president will have the opportunity to evaluate South Texas's president and dean annually and report the results to South Texas's board.

(16) A & M's president will have the chance to make suggestions and express concerns regarding finalists for the positions of South Texas's president and dean.

(17) South Texas agrees to amend its articles of incorporation and bylaws to reflect the affiliation.

(18) A & M agrees to consider requests by South Texas's president, dean, and chairman of the board to place items on the agenda of the A & M system's board of regents.

(19) Both parties agree to "take such action as may be necessary or appropriate from time to time to foster the effective assimilation of [South Texas] graduates, students, administration and faculty into all aspects of [A & M's] culture and affairs."

(20) The parties agree to include each other, and their graduates, students, administration, and faculty on general mailing lists as appropriate.

(21) A & M and South Texas agree to consult and cooperate regarding South Texas's accreditation by the

American Bar Association, membership in Association of American Law Schools, and adherence to the Law School Admission Council's Code of Good Admissions Practices.

(22) In order to ease the transition, South Texas promises to use its best efforts to retain its current president and dean for five years from the effective date of the agreement.

(23) All notices and other necessary documents will be provided to designated representatives of each party.

(24) After five years, either party may give written notice to the other that the Affiliation "is materially and adversely affecting such party's ability to carry out any part of its educational mission." The parties will then cooperate for at least twelve months to remedy the situation. If they are unsuccessful, then the complaining party may give its three-year written notice of intent to terminate the affiliation.

(25) A & M and South Texas agree to consider all proposed amendments to the Agreement in good faith.

(26) The written Affiliation Agreement is integrated and represents all terms of agreement as between the parties.

(27) The Agreement may be executed via the signing of dual original counterparts.

(28) The Agreement is binding upon the parties and their successors and assigns but does not provide benefit to any third party.

(29) The Agreement will be construed and enforced under applicable state and federal laws.

After appellee Texas Higher Education Coordinating Board ("Coordinating Board" or "the Board") expressed concern that the Agreement could not be implemented unless and until the Board approved the addition of law to A & M's role and mission, South Texas filed suit against the Board in April 1998 seeking, *inter alia,* declarations that the Agreement did not exceed A & M's power and that the Board did not have authority to review and approve the Agreement. The Board filed a counterclaim, and A & M intervened as plaintiff. Each party filed a motion for summary judgment regarding the validity of the Agreement. In the motion on its counterclaim, the Board contended that the Agreement violated the Education Code, the Texas Constitution, and the state's public policy.

In its final judgment and order of severance, the district court found "the Affiliation Agreement to be void because it exceeds the authority granted Texas A & M University in the Texas Education Code, and because its essential purpose violates public policy as expressed in the Texas Education Code." The court expressly did not reach the question of whether the Agreement violated the Texas Constitution. The court awarded the Board permanent injunctive relief and prohibited A & M and South Texas from acting or purporting to act pursuant to the Agreement. South Texas and A & M then brought appeal to this Court.

## DISCUSSION

◼ Generally, upon review of a summary judgment, a court determines whether the movant has shown that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). Here, both parties agree this case is appropriately decided by summary judgment. When both parties move for

summary judgment and the trial court grants one motion and denies the other, the appellate court should determine all questions presented. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997); *Cornyn v. Universe Life Ins. Co.,* 988 S.W.2d 376, 378 (Tex.App.—Austin 1999, pet. denied).

### Public Policy

In its summary judgment motion, the Coordinating Board asserted that the Affiliation Agreement violated the public policy of the State of Texas as expressed in the Education Code. A court can declare a contract void as against public policy and refuse to enforce it. *Williams v. Patton,* 821 S.W.2d 141, 147–48 & n. 11 (Tex.1991) (Doggett, J., concurring) (citing numerous cases in which courts found contracts to be void as contrary to public policy). The State's public policy is expressed through its statutes. *National County Mut. Fire Ins. Co. v. Johnson,* 879 S.W.2d 1, 8 (Tex.1993). Our primary goal in interpreting statutes is to discern legislative intent, and we do so by looking first to the plain and unambiguous meaning of the words used. *Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex.1999) (citing *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998); *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993)). We thus look to the plain language of the Education Code to determine the public policy contained therein.

Entitled "Purpose," section 61.002 of the Education Code unequivocally states:

The purpose of this chapter is to establish in the field of public higher education in the State of Texas an agency to provide leadership and coordination for the Texas higher education system, institutions, and governing boards, to the end that the State of Texas may achieve excellence for college education of its youth through the efficient and effective utilization and concentration of all available resources and the elimination of costly duplication in program offerings, faculties, and physical plants.

Tex.Educ.Code Ann. § 61.002(a) (West 1996). The Code further states that the Coordinating Board represents "*the* highest authority in the state in matters of public higher education." *Id.* § 61.051(a) (West Supp.2000) (emphasis added). Moreover, the Board is charged with the duty to take an active part in promoting quality education in the various regions of the state. *Id.* As part of that duty, the Coordinating Board is under a responsibility to develop, after consultation with the governing board of the institution, the role and mission for each public institution of higher education in Texas. *Id.* § 61.051(d). A public institution of higher education cannot change its role or mission without the authorization of the Board; instead, the Board hears applications from the institutions for changes in role and mission and *itself* makes changes necessary to update the role and mission statements of each institution. *Id.* The Coordinating Board also has direct control over the initiation or consolidation of degree or certificate programs. *Id.* § 61.051(e). If a program is disapproved by the Coordinating Board, no funds appropriated to any institution of higher education may be expended for the disapproved program unless the program is subsequently specifically approved by the legislature. *Id.* § 61 .054 (West 1996).

The present issue is before us because the Affiliation Agreement implicates the Board's authority as illustrated in the above provisions. The Agreement's terms, which purport to enhance and ex-

pand A & M's existing programs, coupled with the fact that the Board has approved neither a law school nor a program in law for Texas A & M, directly infringe upon the Board's statutory authority in determining whether degree programs are in the best interest of the state's public institutions and in determining how public resources should be allocated in order to best serve the educational needs of the state. Absent specific legislative action, the Board alone has the role of ensuring the efficient and effective utilization and concentration of public assets available for higher education and eliminating unnecessary duplication. By entering into an agreement that purports to "promote the best interests of higher education in the State of Texas through the strategic utilization of public sector and private sector assets, talents and goals," appellants usurp the Coordinating Board's singular purpose and frustrate clear legislative intent.

If each individual public institution of higher education had the power to determine how public-sector education assets under its control could be "strategically utilized," there would be dozens of decision-makers—an unnecessary duplication—and no single leader. Construing the statutes to result in such a situation would render those sections creating the Coordinating Board and designating it as *the* body to provide leadership and coordination for the Texas higher education system nugatory. Permitting the Agreement to stand absent the Coordinating Board's approval would not only deprive the Board of its statutorily prescribed role, but would also undermine the Board's ability to perform its designated functions of coordinating public resources and eliminating duplication.

■ South Texas's argument that the Affiliation Agreement is merely a compact with a private institution, and therefore does not come under the auspices of the Board's authority, fails. Section 61.051 of the Education Code requires the Board to develop a five-year master plan for higher education in the state; such plan must specifically take into account the resources of *private* institutions of higher education in the state. *Id.* § 61.051(a). Even if the Agreement only implicated the resources of a private institution, the Board's role in developing the State's master plan for higher education would nevertheless be affected. However, the instant case presents a situation beyond the mere expenditure of private resources. As previously stated, the Education Code mandates that no funds appropriated to any institution of higher education be expended for any program which has been disapproved by the Board. *Id.* § 61.054 (West 1996). Because the Agreement is an exclusive affiliation, Texas A & M necessarily assumes responsibility for deciding where some of its resources shall be placed. The Agreement also dictates that A & M "make available to [South Texas] appropriate office space and related support personnel for use by a Law School representative. . . ." Because the use of public property can constitute a use of public funds, Op. Tex. Att'y Gen. Op. LO–97–077 (1997), and because the Agreement effectively allows A & M to expend resources without Board approval or consideration, the Agreement necessarily implicates authority reserved for the Board.

■ Because courts generally construe statutes so as to give effect to the whole and avoid rendering any portion surplusage, *Cameron v.. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981), *Barr v.. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978), we cannot ignore those portions of the Education Code confirming the Coordinating Board's role as the highest authority in matters of public education. We accord-

ingly overrule appellants' issues to the extent they contend that the Affiliation Agreement does not violate public policy.

### Limitation on University's Authority under the Education Code

In its motion for summary judgment, the Coordinating Board argued that by entering into the Agreement, Texas A & M not only infringed on the authority of the Coordinating Board, but also exceeded the University's own authority. A & M's governing board possesses broad power to govern and manage the University. *See* Tex.Educ.Code Ann. §§ 85.21, 86.02 (West 1991). However, the Education Code limits A & M's powers to performing acts that are related to the University's approved role as an institution of higher education. *See id.* § 61.002(b) (West 1996) (charging Coordinating Board with aiding institutions of higher education to realize their full potential "within their prescribed role and scope"); *see also Foley v. Benedict,* 122 Tex. 193, 55 S.W.2d 805, 808 (1932) (noting that public universities' exercise of delegated powers is subject to abuse-of-discretion review); *Starr County v. Starr Indus. Servs., Inc.,* 584 S.W.2d 352, 355–56 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.) (commenting that agency abuses discretion when it acts outside delegated powers); Op. Tex. Att'y Gen. No. MW–475 at 4 (1982) (advising that university can only bind state to extent of its delegated authority); MW–373 at 2 (1981) (stating that university board of regents must exercise powers of governance for purpose of higher education); WW–334 at 3–4 (1958) (advising that university's educational television station could broadcast commercial programs if it had "reasonable relationship to the authorized purposes of said station, and to the statutory purposes of the college"); WW–5 at 6 (1957) (stating that university could engage in educational television broadcasting if "such activity is reasonably necessary for the accomplishment of the statutory purposes of the College and within the legitimate objects of its creation").[1]

The Education Code requires that each institution of higher education have a role and mission statement. *See* Tex.Educ. Code Ann. § 61.0511 (West 1996). The legislature has charged the Coordinating Board with adopting criteria to be used in reviewing the role and mission statements and has required that institutions apply to the Board for approval in order to make changes. *See id.* § 61.051(d). The Coordinating Board's rules provide that an institution's mission statement consists of its (1) table of programs, (2) mission description, (3) historical statement, and (4) additional background information. *See* 19 Tex.Admin.Code § 5.350 (2000).

Neither A & M's mission description nor its table of programs state that instruction in law is within A & M's role and mission. An institution's table of programs includes all degree and certificate programs currently authorized for that institution; A & M's table of programs is blank next to "Law & Legal Studies." Under agency rules, a blank means that a degree program has not been approved for the institution and that such a program does not fall within the institution's approved mission. *See id.* § 5.351 (2000). According to the legend on A & M's table of programs,

---

1. We recognize that the Attorney General's opinions are not binding on this Court; nevertheless, we consider them persuasive here as there is otherwise limited authority in this area, and because that office has repeatedly interpreted these sections of the Education Code since the inception of the Coordinating Board. *See Eddins–Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (1957); *Lyon v. State,* 766 S.W.2d 879, 884 (Tex.App.—Austin 1989, writ ref'd).

the blank also means that "[t]he institution has no degree programs and *no planning authority* in the category." (Emphasis added.) The Agreement expressly states that the affiliation would "broaden[ ] [A & M's] coverage of the academic disciplines." In attempting to "broaden[ ] its coverage of the academic disciplines," A & M is attempting to expand its role and mission without prior Board approval in violation of section 61.051. *See* Tex.Educ.Code Ann. § 61.051(d).

Appellants contend that the Affiliation Agreement does not envision A & M offering, or planning to offer, a law degree; thus, they argue, the Agreement is beyond the concern of the Board. Again, we disagree. In the Agreement, the parties promise to "take such action as may be necessary or appropriate from time to time to foster the effective *assimilation* of [South Texas] graduates, students, administration and faculty into *all aspects* of [A & M's] culture and affairs." (Emphasis added.) ·The Agreement expressly provides that an operating committee of South Texas and A & M representatives will meet at least twice a year to discuss joint degrees, combined degrees, and certification programs, and that an affiliation committee of representatives from both institutions will meet as needed to discuss "development and joint and combined degree plans." The Agreement also allows Texas A & M to plan for ultimately issuing a law degree by implicating A & M in the hiring and administration at South Texas; the Agreement allows A & M to have input regarding candidates for tenure and faculty appointments at South Texas, allows A & M to have representatives present on the Board of Directors, Executive Committee of the Board of Directors, each other standing committee of the Board of Directors, Operating Committee, and Admissions Committee, and allows A & M's President to submit to South Texas's

Board of Directors an evaluation of the law school's President and Dean and make recommendations for a replacement for South Texas's President and Dean should the position become vacant. In addition, the record contains evidence of A & M's own president stating, "It has been our ambition for many years to have a law college." Clearly the Affiliation Agreement contemplates more than merely "enhancing" A & M's existing programs; it represents a conspicuous step in planning for the addition of legal studies and for a law degree to be issued by A & M, an action for which A & M now lacks authority. Before A & M can even "plan" to expand its role and mission, it must gain approval of the Board.

As noted in the Coordinating Board's summary judgment motion, a public institution may not add any "new department, school, degree program, or certificate program ... except with specific prior approval of the [Coordinating B]oard." *Id.* § 61.051(e). "New" is a relative term. *See Mills County v. Brown County,* 87 Tex. 475, 29 S.W. 650, 651 (1895); *Mathis Equip. Co. v. Rosson,* 386 S.W.2d 854, 858 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e .). As the Attorney General noted in considering whether A & M needed permission to offer an approved program on the premises of Arlington State College, a "new" program or school can be created when an old result is achieved in a new way. Op. Tex. Att'y Gen. No. WW–10 at 3 (1957). The same logic applies here. Even if, as appellants contend, the Affiliation Agreement merely allows A & M to offer existing, approved programs in different ways, changing the way in which A & M offers the existing programs would create "new" programs requiring Coordinating Board

approval.[2]

■ We are likewise unpersuaded by appellants' argument that the Affiliation Agreement fulfills the legislative directive that the Coordinating Board encourage cooperation between public and private institutions of higher education. Section 61.064 provides that the Coordinating Board shall "(2) encourage cooperation between *public and private institutions of higher education* wherever possible and may enter into cooperative undertakings with those institutions on a shared-cost basis as permitted by law; ... and (4) cooperate with these private institutions, within statutory and constitutional limitations, to achieve the purposes of this chapter." Tex.Educ.Code Ann. § 61.064 (West 1996). As the Coordinating Board noted in its motion for summary judgment, however, this section only addresses *the Board's* authority to enter into these cooperative undertakings. The Education Code does direct *the Board* to encourage cooperative programs and agreements among institutions of higher education, including agreements relating to degree offerings and library sharing. *Id.* § 61.051(*o*). Even assuming this section relates to agreements between public and private institutions, it clearly suggests *Board* involvement. The Coordinating Board decided that this Affiliation Agreement violated both statutory and constitutional provisions. We overrule appellants' complaints that the trial court erred by finding that the Agreement exceeds A &

M's authority and infringes upon the Coordinating Board's authority. Because we have held that general provisions of the Agreement violate both the law and public policy, we need not address appellants' contention that the Coordinating Board is attempting, without authority, to regulate A & M's use of its name. Without regard to whether A & M's name is used in connection with the affiliation, A & M has exceeded its authority by implicating itself in the governance of a law school, thereby expanding its role and mission; this it cannot do without Board approval.

*Injunctive Relief*

■ We turn finally to A & M's argument that the district court erred in granting injunctive relief. Our review of a district court's order granting or denying a permanent injunction is strictly limited to a determination of whether there has been a clear abuse of discretion by the trial court. *Risk Managers Int'l, Inc. v. State,* 858 S.W.2d 567, 569–70 (Tex.App.—Austin 1993, writ denied); *Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875–76 (Tex.App.—Dallas 1989, no writ).

■ Section 61.301 of the Education Code is a clear reflection of the State's policy that academic terminology in naming or otherwise designating educational institutions, as well as advertising, solicitation, or representation by educational institutions, should not be deceiving or confusing to the public. *See* Tex.Educ.Code Ann. § 61.301 (West 1996). The summary

---

**2.** We also note that if A & M were to offer courses in its existing programs through South Texas, such action would interfere with the Coordinating Board's power to "order the *deletion* or *consolidation* of any courses ... after giving due notice with reasons for that action and after providing a hearing if one is requested by the governing board involved." Tex.Educ.Code Ann. § 61.052(c) (West 1996) (emphasis added). This power extends only

to public institutions of higher education. The Coordinating Board would be unable to order South Texas to delete or consolidate a class being taken by an A & M student. In addition, allowing students to take South Texas classes in fulfillment of A & M degree plans without first receiving Board approval could constitute unauthorized offering of off-campus courses for credit. *See id.* § 61.051(j).

judgment record reveals that the district court affirmatively requested, and carefully considered, evidence on the issue of confusion to the public, as well as responsive evidence as to why an injunction should not be entered. Such evidence defeats the argument that the district court abused its discretion in granting injunctive relief. Having determined that the Agreement is void because it violates the imperatives of the Education Code and public policy as expressed in the Code, the trial court was within its discretion in ordering A & M and South Texas to cease acting or purporting to act under the terms of the void Agreement. We accordingly overrule A & M's issue regarding the propriety of injunctive relief.[3]

## CONCLUSION

Having determined that the district court did not err (1) in granting summary judgment on the basis that appellants' Affiliation Agreement violated the laws and public policy of this state and is therefore void and (2) in ordering appellants to cease operating pursuant to the void Agreement, we affirm the district court judgment.

YEAKEL, Justice, dissenting.

I write briefly in dissent.

That South Texas College of Law ("South Texas") and Texas A & M University ("A & M") have entered into a far-reaching agreement (the "Affiliation Agreement"), which the Texas Higher Education Coordinating Board (the "Coordinating Board") asserts is the first step toward A & M's establishing a college of law, is undisputed. The record reflects that their actions may in fact be designed to ultimately reach that end. However, I disagree with the majority because I believe that the two institutions have not yet taken action that comes within the purview or requires the approval of the Coordinating Board.

The Coordinating Board is given an extremely narrow and restricted charge by the legislature: "It shall perform only the functions which are enumerated in [the Education Code] and which the legislature may assign it." Tex.Educ.Code Ann. § 61.021(a) (West 1996). The legislature has carefully enumerated the Coordinating Board's functions. See id. §§ 61.051–.084 (West 1996 & Supp.2000).

The majority holds that the Affiliation Agreement "usurp[s] the Coordinating Board's singular purpose and frustrate[s] clear legislative intent." Supra at 136.[1] In so holding, the majority reads too broadly the intent of the legislature. The Affiliation Agreement does not create a new degree program or change the role or mission of A & M. See Tex.Educ.Code Ann. § 61.051(d) (West Supp.2000) & § 61.0511 (West 1996). It neither initiates nor consolidates a degree or certificate

---

**3.** In addition, we do not address appellants' request at oral argument that we reform the Agreement to make it conform with the requirements of law. Because the parties did not plead that the contract resulted from mutual mistake, we question whether reformation would be proper under these circumstances. See Champlin Oil & Refining Co. v. Chastain, 403 S.W.2d 376, 382 (Tex.1965) (citing Black on Rescission and Cancellation, Sec. 11) (stating that equitable reformation of written contract based upon premise that

written memorandum of contract does not truly reflect actual agreement of parties because of mutual mistake). At any rate, it does not appear that A & M or South Texas requested reformation at the district court, and therefore we may not address the issue. See Tex.R.App.P. 33.1 (requiring complaint be presented to trial court before being raised on appeal).

**1.** The substantive portion of the Affiliation Agreement is set forth in the majority opinion. See supra at 132–34.

program. *See id.* § 61.051(e) (West Supp. 2000). A & M has not expended funds for a program disapproved by the Coordinating Board. *See id.* § 61.054 (West 1996). Arguably, the Affiliation Agreement may signal A & M's decision to do such things, and, if A & M proceeds without Coordinating Board approval, the university may exceed its delegated authority and infringe on that possessed by the Coordinating Board.

I do not believe that, because the Coordinating Board is "the highest authority in the state in matters of public higher education,"[2] it has the power to expand its enumerated functions in order to prohibit or discourage cooperative efforts between public and private institutions. The legislature has specifically instructed that the Coordinating Board "shall ... encourage cooperation between public and private institutions of higher education wherever possible and ... cooperate with these private institutions, within statutory and constitutional limitations, to achieve the purposes of this chapter." *Id.* § 61.064 (West 1996). Clearly, the Coordinating Board is not encouraging the public-private cooperation envisioned by the legislature in the Education Code. The majority holds that the Coordinating Board may not do so in this case because the Coordinating Board "decided that this Affiliation Agreement violated both statutory and constitutional provisions." *Supra* at 139. The majority reaches this result, in part, because it construes the Affiliation Agreement to expand A & M's role and mission without Coordinating Board approval. *See* Tex.Educ. Code Ann. § 61.051(d) (West Supp.2000); *supra* at 138-39. By the Affiliation Agreement, A & M does not establish a law-degree program. To do so, A & M must seek Coordinating Board approval to amend its mission statement, table of pro-

grams, and degree program. *See* Tex. Educ.Code Ann. § 61.051(d), (e). Until that time, section 61.064 would seem to mandate that the Coordinating Board encourage cooperation between the two institutions. Encouraging such cooperation does not obligate the Coordinating Board to ultimately approve any expanded degree program submitted by A & M.

This case presents a close question concerning the extent of the powers of the Coordinating Board. The relationship created by the Affiliation Agreement may or may not prove to be satisfactory. It is quite possible that South Texas and A & M may need, but not receive, Coordinating Board approval to go farther. But the next step is not the question before us. I believe that the legislature has not granted the Coordinating Board authority over the arrangement created by the Affiliation Agreement. I agree with South Texas that the agreement is a compact between public and private institutions and does not come under the auspices of the Coordinating Board's limited authority. Where the legislature has narrowly restricted a public body's authority, courts should not construe the legislature's action in such a way that the body's authority is expanded. I fear that the result of today's decision is to grant the Coordinating Board overarching authority to review cooperative agreements between institutions of higher education. I do not believe that end to be the intent of the legislature. I would, therefore, hold that by entering into the Affiliation Agreement A & M did not exceed its authority, the Coordinating Board does not have the authority to review and approve it, and the agreement does not violate state law. I would reverse the district court's judgment and render judgment for South Texas and A & M. Because the

2. Tex.Educ.Code Ann. § 61.051(a) (West Supp.2000).

majority does otherwise, I respectfully dissent.